IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

| | |
|---|---|
| CARLTON & HARRIS CHIROPRACTIC, INC., a West Virginia corporation, individually and as representative of a class of similarly-situated persons,<br><br>     Plaintiff,<br><br> vs.<br><br>PDR NETWORK, LLC, PDR DISTRIBUTION LLC, PDR EQUITY, LLC and JOHN DOES 1-10,<br><br>     Defendants. | Civil Action No. 3:15-cv-14887<br>Judge Robert C. Chambers<br><br>CLASS ACTION |

**DEFENDANTS PDR NETWORK, LLC, PDR DISTRIBUTION, LLC, AND PDR EQUITY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

COME NOW, Defendants PDR Network, LLC, PDR Distribution, LLC, and PDR Equity, LLC (collectively, "PDR Network"), by and through their undersigned counsel, and hereby move to dismiss Plaintiff Carlton & Harris Chiropractic, Inc.'s ("Plaintiff") Class Action Complaint pursuant to Rule 12(b)(6) because the sole facsimile at issue is not an "unsolicited advertisement" as a matter of law.

## INTRODUCTION

As a prerequisite to liability under the Telephone Consumer Protection Act of 1991 (the "TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 (the "JFPA"), the December 17, 2013, fax at issue (the "Fax") must qualify as an "unsolicited advertisement." The JFPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to a person without that person's express invitation or permission[.]" Courts across the nation have held that

1

the term "commercial availability" requires that the communication advertise products/services as being available for *purchase or sale*. Plaintiff has not and cannot satisfy this threshold requirement.

As evident from the attachment to the Complaint, rather than attempting to sell Plaintiff any property, goods, or services, the single Fax at issue merely informed Plaintiff of its ability to reserve a free electronic copy (eBook) of the *Physicians' Desk Reference*® (the "PDR")—a popular drug information reference source available in the U.S.[1] The eBook referenced in the Fax provides (for free) information to physicians about drugs they may consider prescribing; the *PDR* is never offered for sale. Instead, the *PDR* is indirectly funded by pharmaceutical companies to help satisfy various "duty to warn" laws. Nor is the Fax a "pretext" for offering goods for sale. The Fax was sent solely for informational purposes; primarily to update existing subscribers as to the *PDR*'s availability as an eBook for 2014. Critically, PDR Network neither manufactures the listed drugs, nor has a pecuniary interest in "selling" Plaintiff anything. Indeed, multiple courts in the Sixth Circuit have already warned Plaintiff's counsel against filing "frivolous" suits such as this one—whereby useful medical information is being communicated. Therefore, because the Fax is not an "advertisement" as a matter of law, Plaintiff's claim fails and the Complaint must be dismissed.

I.  BACKGROUND.

   A.  The Complaint.

Plaintiff's Complaint purports to "challenge [PDR Network's alleged] practice of sending unsolicited facsimiles" under the JFPA and the regulations promulgated thereunder. (Compl. ¶¶

---

[1] As discussed, the *PDR* is a publicly-available drug information reference book provided to health care professionals—free of charge—that contains full FDA-approved drug label information, including warnings/precautions, drug interactions, and hundreds of full-color pill images. (*See* PDR.net - About Us, Ex. 1; *see also* Dkt. No. 1-1.)

1-2.) Specifically, Plaintiff asserts that, "upon information and belief," PDR Network "sent facsimile transmissions of unsolicited advertisements to Plaintiff and the [putative] Class in violation of the JFPA, including, but not limited to, the [Fax]." (*Id.* ¶ 2.) A true and correct copy of the Fax is attached to the Complaint as Exhibit A, and is "made a part [t]hereof." (*Id.* ¶¶ 2, 11.)

According to Plaintiff, the Fax "describes the commercial availability or quality of [PDR Network's] goods and services," (*id.* ¶ 2), and thus "constitute[s] an advertisement under the [JFPA]." (*Id.* ¶ 29.) Plaintiff also alleges that PDR Network "benefit[s] or profit[s] from the sale of the products, goods and services being offered on [the Fax]." (*Id.* ¶ 12.) Plaintiff further claims that it "had not invited or given permission to [PDR Network] to send the [Fax]." (*Id.* ¶ 13.)

Based on the foregoing, Plaintiff brings this case as a putative class action and seeks, among other things: (i) an injunction preventing PDR Network from sending "unsolicited advertisements" in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each fax (and to have such damages trebled if they are shown to be willful and knowing). (*Id.* ¶¶ 4-5; *see also id.* p.13.)

B. **PDR Network and the *Physicians' Desk Reference*®.**

PDR Network delivers health knowledge products and services that support drug prescribing decisions and patient adherence to improve health. (*See* PDR.net - About Us, Ex. 1.)[2] To further these goals, PDR Network's *Physicians' Desk Reference*® suite of services

---

[2] Pharmaceutical companies are required to widely disseminate information about the safety risks and side effects of their products to physicians and other prescribers in order to satisfy state "duty to warn" laws. *See, e.g., Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 764 (Ky. 2004) (under Kentucky product liability law, drug manufacturers have a duty to adequately warn of the foreseeable risks associated with use of their product); *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2573 (2011) (under Minnesota and Louisiana law, a duty to warn falls specifically on the

provides healthcare professionals with multichannel access to important drug information, including the *PDR*. (*Id.*) The *PDR* is the most recognized drug information reference available in the U.S. (*Id.*) The *PDR* is provided to health care professionals—free of charge—and contains full FDA-approved drug label information, including warnings/precautions, drug interactions, and hundreds of full-color pill images. (Dkt. No. 1-1.) According to one federal judge, the *PDR* can best be described as:

> [A] compilation of manufacturers' prescribing information (package insert) on prescription drugs, updated annually [and d]esigned to provide physicians with the full legally mandated information relevant to writing prescriptions (just as its name suggests)[.] The compilation is financially supported in part by pharmaceutical manufacturing corporations which create drugs listed within its pages.

*See United States v. Rodella*, 2015 U.S. Dist. LEXIS 20704, at *9 n.2 (D.N.M. Feb. 2, 2015).

The importance of the *PDR* to population health in the U.S.—and its ability to shield pharmaceutical manufacturers from liability where drug labels were properly written and distributed via the *PDR*—has been consistently recognized in dozens of cases across the country.[3]

---

manufacturer) (citations omitted); *see also Mutual Pharm. Co. v. Bartlett*, 133 S.Ct. 2466, 2474 (2013) (duty to warn under New Hampshire law is part of the "general duty to design, manufacture and sell products that are reasonably safe for their foreseeable uses") (citation omitted).

[3] *See, e.g., Baker v. St. Agnes Hosp.*, 421 N.Y.S.2d 81, 86 (N.Y. App. Div. 2d Dept. 1979); *Larkin*, 153 S.W.3d at 764; *Calhoun v. Hoffman La Roche, Inc.*, 2000 La. App. LEXIS 326 (La. Ct. App. Feb. 18, 2000), *aff'd*, 2000 La. App. LEXIS 3179 (La. Ct. App. Mar. 31, 2000) (affirming summary judgment where defendants warned prescriber through package insert and *PDR*, despite prescriber's testimony he was not aware of the risk); *Vitanza v. Upjohn Co.*, 48 F. Supp. 2d 124 (D. Conn. 1999) (granting summary judgment under learned intermediary doctrine because defendant provided updated warnings through the *PDR*); *Hall v. Merck, Sharp & Dohme*, 774 F. Supp. 604 (D. Kan. 1991) (granting summary judgment where manufacturer warned the prescriber through the *PDR*); *Glucksman v. Halsey Drug Co.*, 160 A.D.2d 305, 307 (NY App. Div 1st Dept. 1990) (granting summary judgment for manufacturer that provided warnings through the *PDR* and package inserts); *Guevara v. Dorsey Laboratories, Div. of Sandoz, Inc.*, 845 F.2d 364, 366 (1st Cir. 1988) (holding use of the *PDR* along with package

4

C.     **The Fax.**

Plaintiff is a chiropractic medical office located in West Virginia. (Compl. ¶ 8.) The Fax in question—attached as Exhibit A to the Complaint—informs Plaintiff of the availability of a free copy of the 2014 *PDR* in electronic form. (*See* Dkt. No. 1-1.) The "Subject" line of the Fax reads: "**FREE** 2014 *Physicians' Desk Reference eBook* – Reserve Now." (*Id.*; emphasis added) The body of the fax itself contains two (2) additional references to the 2014 *PDR* eBook as being "free." (*Id.*) The Fax also makes clear that the *PDR* is "[n]ow in a new, convenient digital format," while still consisting of the "[s]ame trusted, FDA-approved full prescribing information." (*Id.*) According to the Fax, this update to an eBook version of the *PDR* for 2014 was "[d]eveloped to support [physicians'] changing digital workflow." (*Id.*) To drive the point home, an image of the 2014 *PDR* eBook is also depicted on the screen of an iPad® in the center of the page. (*Id.*)

II.    **ARGUMENT.**

A.     **Standard for Motions to Dismiss Under Rule 12(b)(6).**

"To overcome a motion to dismiss under Rule 12(b)(6), a complaint must be plausible." *See Earle v. City of Huntington*, 2015 U.S. Dist. LEXIS 127444, at *3-4 (S.D. W. Va. Sept. 23, 2015) (Chambers, J.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007)). "This standard requires a plaintiff to set forth the grounds for an entitle[ment] to relief that is more than

---

insert to provide warning was adequate); *Dunkin v. Syntex Laboratories, Inc.*, 443 F. Supp. 121, 124 (W.D. Tenn. 1977) (recognizing the *PDR* as the "standard reference work available throughout the medical community" and finding warnings in the *PDR* "adequate as a matter of law"); *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1097-98 (8th Cir. 2013) (discussing effect of the *PDR* on learned intermediary doctrine and failure to warn); *McDowell v. Eli Lilly & Co.*, 58 F. Supp. 3d 391, 403 (S.D.N.Y. 2014) (absolving drug manufacturer from liability where warning given to prescribing physician by manufacturer gave detailed information on risks through the *PDR*); *Yates v. Ortho-Mcneil-Janssen Pharms., Inc.*, 2015 U.S. App. LEXIS 21428, at *11 (6th Cir. Dec. 11, 2015) (same); *United States v. Azmat*, 2015 U.S. App. LEXIS 19574, at *42, 53-54 (11th Cir. Nov. 10, 2015) (in admitting expert medical testimony, *PDR* described as "standard reference material").

5

mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at *3 (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). "Facial plausibility exists when a claim contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at *3-4 (citation omitted).

"Accepting the factual allegations in the complaint as true (even when doubtful), the allegations 'must be enough to raise a right to relief above the speculative level . . . .'" *Id.* at *4 (citation omitted). "If the allegations in the complaint, assuming their truth, do 'not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* (citing *Twombly*, 550 U.S. at 558). "Finally, [a]lthough for the purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

B. **Plaintiff's JFPA Claim Fails Because the Fax is Not an "Advertisement."**

To prevail on a claim under the JFPA, a plaintiff must show that the defendant (1) used a telephone facsimile machine, computer or other device to send an (2) unsolicited (3) advertisement. *See* 47 U.S.C. § 227(b)(1)(C). The JFPA defines "unsolicited advertisement" as "any material advertising the **commercial** availability or quality of any property, goods, or services which is transmitted to a person without that person's express invitation or permission[.]" *Id.* § 227(a)(5) (emphasis added); *see also* 47 C.F.R. § 64.1200(f)(15). Plaintiff has not—and cannot—satisfy this requirement.

6

It is well-settled that whether a fax qualifies as an "unsolicited advertisement" under the JFPA is "a question of law appropriate for resolution by the Court." *Holmes v. Back Doctors Ltd.*, 2009 U.S. Dist. LEXIS 97592, at *6 (S.D. Ill. Oct. 21, 2009), *vacated in part on other grounds*, 695 F. Supp. 2d 843 (S.D. Ill. 2010) (citations omitted). And "[i]t is undisputed that, if the fax . . . was not an 'unsolicited advertisement,' [plaintiff] has failed to state a claim under the TCPA." *P&S Printing LLC v. Tubelite, Inc.*, 2015 U.S. Dist. LEXIS 93060, at *6 (D. Conn. July 17, 2015).

Here, the Fax is not an "advertisement" because: (1) it does not offer anything for purchase or sale; and (2) its primary purpose is to inform members that the *PDR* is now available to the public as a free eBook for 2014. Accordingly, Plaintiff's Complaint must be dismissed for failure to state a claim.[4]

1. **The Fax Does Not Advertise the "Commercial Availability" of Any Goods or Services Because It Does Not Offer Anything for Purchase or Sale.**

Rather than attempting to sell any products, the Fax and the eBook it offers (for free) provides information to physicians about the drugs they may consider prescribing.[5] Thus, neither the Fax nor the free *PDR* eBook concerns the "commercial availability" of such items.

---

[4] Because the Fax is attached to the Complaint as an exhibit, and because Plaintiff explicitly incorporated the Fax into the Complaint, (Compl. ¶¶ 2, 11), this Court can consider its content on a Rule 12(b)(6) motion to dismiss. *P&S Printing LLC*, 2015 U.S. Dist. LEXIS 93060, at *5; *see also Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst.*, 2006 U.S. Dist. LEXIS 42552, at *2 (W.D. Mo. June 23, 2006) (because the fax was attached as an exhibit, court could "examine its contents without converting the Motion to Dismiss into a Motion for Summary Judgment.").

[5] Because Plaintiff has failed to provide any descriptive information whatsoever regarding Defendant PDR Network—aside from its state of incorporation, and the location of its principal place of business (Compl. ¶ 9)—or the *PDR*, PDR Network has supplied such information from a single page on its official company website. *See* Motion Exhibit 1. If needed, this Court could take judicial notice of such content under Rule 201 of the Federal Rules of Evidence because it can be "accurately and readily determined from sources whose accuracy cannot reasonably be

7

Courts throughout the country have interpreted the term "commercial availability" to mean advertising products or services as being available for purchase or sale. *See, e.g., Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, 2011 U.S. Dist. LEXIS 12166 (N.D. Ga. Feb. 7, 2011); *Rudgayzer & Greatt v. Enine, Inc.*, 779 N.Y.S. 2d 882 (N.Y. App. Div. 2d Dept. 2004); *Boehringer Ingelheim Pharms., Inc.*, 2015 U.S. Dist. LEXIS 3029, at *6-7; *N.B. Indus. v. Wells Fargo & Co.*, 2010 U.S. Dist. LEXIS 126432 (N.D. Cal. Nov. 30, 2010), *aff'd*, 465 Fed. Appx. 642 (9th Cir. 2012). Indeed, the TCPA *only* prohibits faxes that are "advertisements." *Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1163 (N.D. Ill. 2009) ("While Congress's clear intent was to prohibit unsolicited advertising, it is equally clear that Congress intended non-commercial messages to fall outside the ban."); *Physicians Healthsource, Inc. Alma Lasers, Inc.*, 2012 U.S. Dist. LEXIS 133222, at *4 (N.D. Ill. Sept. 18, 2012) (citing H.R. Rep. No. 317, at 10, 102d Cong., 1st Sess. 25 (1991)). Non-commercial faxes, like the instant Fax, fall outside the TCPA's prohibitions. *Holmes*, 2009 U.S. Dist. LEXIS 97592, at *1, 4; *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 56 (9th Cir. 1995).

Here, the Fax does not offer anything for purchase or sale by PDR Network to Plaintiff. Instead, the Fax simply informs the recipient of their ability to "reserve" a free copy of the 2014 *PDR* eBook. (Dkt. No. 1-1.) As stated, PDR Network receives funding for the *PDR* from

---

questioned." *See* FED. R. EVID. 201. And PDR Network has made such a request for judicial notice. Various courts have also recognized that this exact information "can be considered on a 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *See Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc.*, 2015 U.S. Dist. LEXIS 3029, at *10-11 n.4 (D. Conn. Jan. 12, 2015) (court could consider "attached information that is not referenced to in the complaint" on a Rule 12(b)(6) motion to dismiss in a JFPA case because the court "can take judicial notice of all of the attached information . . . from official company . . . websites") (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 129 (D. Conn. 2007), *aff'd*, 312 F. Appx. 400 (2d Cir. 2009)).

"pharmaceutical manufacturing corporations which create drugs listed within its pages"—***not*** from recipients of the Fax, like Plaintiff. *See Rodella*, 2015 U.S. Dist. LEXIS 20704, at *9 n.2.

Merriam-Webster defines the term "commercial" as being "related to or used in the buying and selling of goods and services." *See* MERRIAM-WEBSTER ONLINE DICTIONARY, *Commercial - Simple Definition*, *available at* http://www.merriam-webster.com/dictionary/commercial (last visited January 26, 2015). Because the 2014 *PDR* eBook is not "commercial[ly] availabl[e]" to Plaintiff—in that there is nothing for Plaintiff to "buy" or "purchase"—the Fax cannot constitute an "advertisement" as a matter of law. *Phillip Long Dang*, 2011 U.S. Dist. LEXIS 12166, at *11-12 (fax was beyond the scope of the TCPA when it did not seek to sell anything to the recipient); *Rudgayzer & Greatt*, 779 N.Y.S. 2d at 884 (fax falls within coverage of the TCPA only when "it has the purpose and effect of influencing fax recipients to buy services."); *Boehringer Ingelheim Pharms., Inc.*, 2015 U.S. Dist. LEXIS 3029, at *14-15 (granting motion to dismiss where faxed invitation to "awareness dinner" discussing treatment of medical condition did not advertise "commercial availability" of any goods, in that defendant's proposed drug was not yet FDA-approved and could not be purchased); *N.B. Indus.*, 465 Fed. Appx. at 642 (affirming dismissal on motion to dismiss where business leadership award was not "commercially available," and, "therefore, the description of the award, the application to apply for it, and the text encouraging recipients to apply are not unsolicited advertisements").

The Fax also does not relate to the "buying and selling of goods" in some other context; for example, by attempting to connect Plaintiff to a forum for buying and selling relevant products and services, *cf. G.M. Sign, Inc. v. MFG.com, Inc.*, 2009 U.S. Dist. LEXIS 35291, at *7 (N.D. Ill. Apr. 24, 2009), or to potential patients for its practice. *Cf. Neurocare Inst. of Cent.*

9

*Fla., PA v. Heatlhtap, Inc.*, 8 F. Supp. 3d 1362, 1367 (M.D. Fla. Mar. 25, 2014). The Fax thus does not advertise the "commercial availability or quality" of PDR Network's "products, goods, and services" for purchase, as Plaintiff wrongly suggests. (Compl. ¶¶ 2, 12.)

Lastly, it is worth nothing that the Fax explicitly states Plaintiff is "receiving this fax because you are a member of the PDR Network." (Dkt. No. 1-1.) This too has led courts to hold faxes were not advertisements, and to grant motions to dismiss. *See Physicians Healthsource, Inc. v. Multiplan Servs.*, 2013 U.S. Dist. LEXIS 133397, at *4-5 (D. Mass. Sept. 18, 2013) (fax providing plaintiff-chiropractor with information about preferred healthcare provider network to which he belonged, and advising him that he had access to a population of patients within this network, did not "purport to sell or buy goods or services" whereby the information concerned "services already available to [plaintiff] pursuant to an existing account or subscription" and the fax "state[d] explicitly" that it was sent because plaintiff was a member of defendant's network).[6] Thus, the instant Fax is not a prohibited "unsolicited advertisement" under the TCPA/JFPA.

### 2. The Fax Was Sent for Informational Purposes.

In determining whether a fax constitutes an "advertisement" under the TCPA, "it is appropriate for the Court to adopt a reasonable construction of the TCPA promulgated by the [Federal Communications] Commission" (the "FCC"). *See Boehringer Ingelheim Pharms., Inc.*, 2015 U.S. Dist. LEXIS 3029, at *6-7 (citations omitted).

---

[6] The fact that Plaintiff claims it did not give "permission" for PDR Network to send the Fax, (Compl. ¶ 13), or that it was not a member of PDR Network's network of physicians, is irrelevant in determining whether or not the Fax was an "advertisement." On the contrary, what matters is that PDR Network's clearly-stated intent was that only the "members" of its network receive the Fax. For instance, the court in *P&S Printing LLC*, made clear that "[t]he fact that the fax was received by [plaintiff], a non-customer, cannot transform the content of this message, which is informational, into an advertisement without more." 2015 U.S. Dist. LEXIS 93060, at *13 (citing 47 U.S.C. § 227(a)(5); *Boehringer Ingelheim Pharms., Inc.*, 2015 U.S. Dist. LEXIS 3029, at *9).

10

Although the TCPA does not define the term "advertising," the FCC has found that informational messages, even with an incidental amount of advertising, are not subject to liability. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967-01, at 25973-74 (May 3, 2006).

Here, the Fax is an "informational" communication because its primary purpose is to communicate information—not promote the sale or purchase of a product or service. *See* 71 Fed. Reg. 25967-01, at 25973 ("Facsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules."). Indeed, courts have held that "notifications concerning the existence of an opportunity," such as the existence of a job opening or a research study, are not prohibited by the TCPA rules. *See Boehringer Ingelheim Pharms., Inc.*, 2015 U.S. Dist. LEXIS 3029, at *7-8; *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, 2013 U.S. Dist. LEXIS 15952, at *12-13 (D.N.J. Feb. 6, 2013) (holding fax that notified recipient of a pharmaceutical drug's reclassification and up-do-date information did not promote either the availability or the quality of the drug and therefore was not an advertisement), *reconsideration denied*, 2013 U.S. Dist. LEXIS 79557 (D.N.J. June 6, 2013); *Phillips Randolph Ent., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (fax notifying recipient of a new research study on a health care program was not an advertisement); *Ameriguard, Inc.*, 2006 U.S. Dist. LEXIS 42552 (W.D. Mo. June 23, 2006), *aff'd*, 222 Fed. Appx. 530 (8th Cir. 2007) (same); *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa. 1994) (fax announcing existence of job openings was not an advertisement); *Holmes*, 2009 U.S. Dist. LEXIS 97592, at *1 (regularly-distributed newsletters to a target audience for educational

purposes was not an advertisement); *see also N.B. Indus.*, 465 Fed. Appx. at 642 (fax notifying recipient of an upcoming award ceremony and asking for applications was not an advertisement).

As discussed, the Fax at issue simply provides "notification" to recipients that the *PDR* is "now in a new, convenient digital format." (Dkt. No. 1-1.) It also informs these same recipients of the "opportunity" to "reserve" a free copy of the 2014 *PDR* eBook by visiting a dedicated web address—*i.e.*, www.PDRNetwork.com/eBook14—rather than directing them to PDR Network's main webpage in order to locate the free eBook amongst other possible promotions.[7] There is no option to "purchase" the update. (*Id.*) The Fax merely informed Plaintiff of an update to its subscription as a "member" of the "PDR Network"; courts routinely grant dismissal in such contexts. *See Drug Reform Coordination Network, Inc. v. Grey House Publ'g Inc.*, 2015 U.S. Dist. LEXIS 60981, at *9 (D.D.C. May 11, 2015) ("Standing alone, the Fax does not promote the [news media contact] Directory for sale. Rather, it appraised Plaintiff of the Directory's upcoming edition and offered the opportunity to update Plaintiff's 'free listing' so that its contact information would be accurate. Thus, on its face the Fax is not an 'unsolicited advertisement.'"); *see also P&S Printing LLC*, 2015 U.S. Dist. LEXIS 93060, at *11-12 (granting motion to dismiss where fax's "primary purpose" was to "communicate information to current customers about a change in its delivery schedule due to the Labor Day holiday," and noting updates on delivery schedules are "inherently informational").

In a comparable case, a federal court dismissed a JFPA complaint involving a fax sent by a pharmaceutical company about one of its drugs where the fax contained significantly more

---

[7] That the Fax contains PDR Network's logo at the top of the page is also of no moment. "As many courts have pointed out, the appearance of a defendant's logo, without more does not transform an informational message to an advertisement; indeed, the TCPA actually requires the sender's name appear on the fax." *Boehringer Ingelheim Pharms.*, Inc., 2015 U.S. Dist. LEXIS 3029, at *7 n.3 (citing 47 U.S.C. § 227(d)(1); *Holmes*, 2009 U.S. Dist. LEXIS 97592; *Janssen Pharms.*, 2013 U.S. Dist. LEXIS 15952, at *16-17).

indicia of an advertisement than the instant Fax. In *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, the plaintiff sued over a facsimile sent by the manufacturer of the drug Levaquin, which explained the drug was reclassified for insurance purposes, and was now available for a lower co-payment. 2013 U.S. Dist. LEXIS 15952, at *12-13. Notwithstanding the fact that the senders of the fax might ultimately receive some commercial benefit from the fax, the court found the fax was informational and not an advertisement. The court held that despite the fax containing the pharmaceutical company's contact information and logo, "the potential to gain some benefit from sending information, without the presence of additional commercial statement in the message, is insufficient to transform an informational message to an advertisement." *Id.* at *14.[8]

Likewise, a recent opinion out of the Sixth Circuit, *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 2014 U.S. Dist. LEXIS 166777 (N.D. Ohio Dec. 2, 2014), *aff'd*, 788 F.3d 218 (6th Cir. 2015), *pet. for rehearing en banc denied*, 2015 U.S. App. LEXIS 12411 (July 16, 2015), supports PDR Network's position. In *Sandusky*, defendant Medco Health Solutions, Inc. was a "pharmacy benefit manager" that provided services to health-plan sponsors, such as employers. 788 F.3d at 220. Medco's services specifically included "keeping an updating a list of medicines (known as the 'formulary') that are available through a healthcare plan." *Id.* Like PDR Network, Medco also did not manufacture or sell the drugs. *Id.* Medco

---

[8] In analyzing whether a fax crosses the line from "informational" to "advertisement," courts should consider "whether the message is an advertisement which tends to propose a commercial transaction"—"not whether there is some ancillary commercial benefit to either party." *Id.* at *13-14 (citing *Lutz*, 859 F. Supp. at 181); *N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *10 ("The inquiry is not whether there is an ancillary commercial benefit to either party but instead is whether the message is an advertisement (or a pretext for an advertisement)."). Put another way, the proper inquiry "is whether the content of the message is commercial, not what predictions can be made about future economic benefits." *See Janssen Pharms.*, 2013 U.S. Dist. LEXIS 15952, at *16.

13

sent the plaintiff two faxes, one of which was the formulary, and the other of which was an update to the formulary. *Id.* at 220-21. The plaintiff, a healthcare provider, claimed these faxes violated the TCPA. *Id.*

In affirming the district court's grant of summary judgment to Medco, the Sixth Circuit acknowledged the faxes contained information concerning the availability of Medco's product, the formulary, *id.* at 222, but wisely concluded that the faxes lacked the required ***commercial*** aspect because, as seen here, "Medco ha[d] no interest whatsoever in soliciting business from [the plaintiff]," and the faxes were "not sent with hopes to make a profit, directly or indirectly, from [the plaintiff] ***or others similarly situated***." *Id.* (emphasis added). Rather, Medco's faxes were designed to "inform [the plaintiff] what drugs its patients might prefer, based on Medco's formulary—a paid service already rendered not to [the plaintiff] but to Medco's clients." *Id.*

Here, as in *Sandusky*, PDR Network too lacks a pecuniary interest in profiting from any action Plaintiff may take in response to the Fax—meaning PDR Network similarly lacks any "interest . . . in soliciting business from" Plaintiff. Thus, whether Plaintiff opted to "reserve" its free 2014 *PDR* eBook via the link provided would not profit PDR Network in the sense of receiving any revenue. This is illustrated by the fact Plaintiff could have reserved one copy of the 2014 *PDR* eBook, or ***multiple*** copies for "[e]verybody in [the] practice." (Dkt. No. 1-1.) As in *Sandusky*, the required "commercial aspect" with respect to the Fax's content is equally absent here.[9] Thus, Plaintiff cannot "raise its assertions above the speculative level" simply by asserting

---

[9] The district court in *Sandusky* was so dismayed by plaintiff's baseless JFPA suit that Judge Carr described it as "frivolous litigation" and issued the following warning to other medical providers:

> Medical providers, like the plaintiff here, are often in the forefront of those complaining about frivolous litigation. That description is not far off the mark, if off it at all here. While by noting that fact I do not invite or expect to receive a motion for sanctions, ***I trust this opinion will serve as***

PDR Network "benefit[s] or profit[s] from the sale of the products, goods and services being offered on [the Fax]." (*Id.* ¶ 12.) Because the Fax is not an "advertisement"—in that it is actually an "informational communication"—there can be no liability under the JFPA.

## CONCLUSION

For the reasons stated, Defendants PDR Network, LLC, PDR Distribution, LLC, and PDR Equity, LLC's Motion to Dismiss should be granted, and Plaintiff's Class Action Complaint should be dismissed, with prejudice.

PDR NETWORK, LLC,
PDR DISTRIBUTION, LLC, AND
PDR EQUITY, LLC
By Counsel

Dated: February 5, 2016       By: *s/ Marc E. Williams*
                                  **NELSON MULLINS RILEY &**
                                  **SCARBOROUGH LLP**
                                  Marc E. Williams (WVSB# 4062)
                                  Alexander L. Turner (WVSB# 10839)

---

*a warning to plaintiff and others who receive faxes of this sort, which serve a useful, and not a disruptive or illegal purpose not to file similar fruitless litigation in the future. If plaintiffs or others fail to heed this warning, I trust my colleagues will respond appropriately.*

2014 U.S. Dist. LEXIS 166777, at *5 n.1 (Carr, J.) (emphasis added). On appeal, the Sixth Circuit noted that "Sandusky **and its attorneys** did not heed that warning. Not only did Sandusky appeal this case, its attorneys have filed suits (and appeals after losing) in other courts as well." 788 F.3d at 221 (emphasis added) (citing *Boehringer Ingelheim Pharms., Inc.*, 2015 U.S. Dist. LEXIS 3029, *appeal filed* No. 15-288 (2d Cir. Feb. 3, 2015)). **Notably, counsel for Plaintiff (Anderson+Wanca) was also counsel to the plaintiff in** Sandusky—**to whom Judge Carr's warning was directed**. Indeed, Anderson+Wanca's history of misconduct is well-documented. *See, e.g., In Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013); *Creative Montessori Learning Ctr. v. Ashford Gear LLC*, 662 F.3d 913, 914 (7th Cir. 2011); *Siding & Insulation Co. v. Combined Ins. Grp., Ltd., Inc.*, 2014 WL 1577465, at *1-2 (N.D. Ohio Apr. 17, 2014); *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 981 F. Supp. 2d 1239, 1242-46 (S.D. Fla. 2013), *rev'd and remanded*, 771 F.3d 1274 (11th Cir. 2014); *City Select Auto Sales, Inc. v. David Randall Assoc., Inc.*, 296 F.R.D. 299, 304-07 (D.N.J. 2013); *Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 292 F.R.D. 433, 436 (E.D. Mich. 2013); *CE Design Ltd. v. CY's Crabhouse N., Inc.*, 2010 WL 3327876 (N.D. Ill. Aug. 23, 2010).

949 Third Avenue, Suite 200
Huntington, WV 25701
Phone: 304.526.6501
Fax: 304.526.3541
Email: marc.williams@nelsonmullins.com
Email: alex.turner@nelsonmullins.com

**BLANK ROME LLP**
Jeffrey N. Rosenthal, admitted *pro hac vice*
One Logan Square, 130 N. 18th Street
Philadelphia, PA 191013
Phone: 215.569.5553
Fax: 215.832.5553
Email: Rosenthal-j@blankrome.com

Ana Tagvoryan, admitted *pro hac vice*
2029 Century Park East, Sixth Floor
Los Angeles, CA 90067
Phone: 424.239.3465
Fax: 424.239.3690
Email: ATagvoryan@blankrome.com

*Attorneys for Defendants PDR Network, LLC,*
*PDR Distribution, LLC, and PDR Equity, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT HUNTINGTON

| | |
|---|---|
| CARLTON & HARRIS CHIROPRACTIC, INC., a West Virginia corporation, individually and as representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>vs.<br><br>PDR NETWORK, LLC, PDR DISTRIBUTION LLC, PDR EQUITY, LLC and JOHN DOES 1-10,<br><br>Defendants. | Civil Action No. 3:15-cv-14887<br>Judge Robert C. Chambers<br><br>CLASS ACTION |

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 5th day of February, 2016, a true and correct copy of the foregoing *"Defendants PDR Network, LLC, PDR Distribution, LLC, and PDR Equity, LLC's Motion to Dismiss Pursuant to Rule 12(b)(6)"* and *"Defendants PDR Network, LLC, PDR Distribution, LLC, and PDR Equity, LLC's Memorandum of Law In Support of Motion to Dismiss Pursuant to Rule 12(b)(6)"* and *"Civil Information Sheet"* was filed using the Court's CM/ECF system, which will provide electronic notice to the following individuals:

Brian J. Wanca
Ryan M. Kelly
**ANDERSON+WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
bwanca@andersonwanca.com
rkelly@andersonwanca.com

Stuart Calwell
D. Christopher Hedges
David H. Caniger
**THE CALWELL PRACTICE, LLC**
500 Randolph Street
Charleston, WV 25302
scalwell@calwelllaw.com
dcarriger@calwelllaw.com
chedges@calwelllaw.com

*Counsel for Plaintiff*
*Carlton & Harris Chiropractic, Inc.*


By: ___/s/Marc E. Williams___