IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CARLTON & HARRIS CHIROPRACTIC,
INC., a West Virginia corporation,
individually and as a representative of a class
of similarly-situated persons,

                Plaintiff,

v.                                    CIVIL ACTION NO.   3:15-14887

PDR NETWORK, LLC,
PDR DISTRIBUTION, LLC,
PDR EQUITY, LLC, and
JOHN DOES 1-10,

                Defendants.

MEMORANDUM OPINION AND ORDER

Pending is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) and a Motion for Judicial Notice under Federal Rule of Evidence 201, both brought by Defendants PDR Network, LLC, PDR Distribution, LLC, and PDR Equity, LLC (collectively "PDR"). ECF Nos. 18, 20. Oral argument on the two motions was held on September 29, 2016. For the reasons below, the Court **GRANTS** both motions.

## I.      Background

This is a putative class action brought pursuant to the Telephone Consumer Protection Act of 1991 as amended by the Junk Fax Prevention Act of 2005 ("TCPA"), 47 U.S.C. § 227, claiming PDR sent unsolicited fax advertising in violation of the TCPA. According to the Complaint, PDR sent a single fax to Plaintiff's office. The fax, which is attached to the Complaint, offers the recipient a free "Physicians' Desk Reference eBook." The fax describes the reference book as

containing the "[s]ame trusted, FDA-approved full prescribing information." The fax also provides a website which the recipient can visit to download the book, a customer service email and phone number, and a prominent picture of an electronic device with the cover of the book displayed. Plaintiff contends that this single fax is an unsolicited advertisement and its transmission is in violation of the TCPA. PDR's motion to dismiss contends that the fax is not an advertisement as a matter of law because it does not offer anything for purchase or sale. The Court agrees.

## II.   Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the remaining factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555–56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for

more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### III.    Discussion

#### A.  Judicial Notice

PDR asks the Court to take judicial notice of an exhibit attached to the Motion to Dismiss—a printout from PDR Network's website—to help the Court decide the Motion to Dismiss. A court may consider information susceptible to judicial notice on a 12(b)(6) motion to dismiss. When deciding a 12(b)(6) motion to dismiss "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine . . . in particular, . . . matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)); *see also Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (citing *Tellabs*, 551 U.S. at 322). "A court may take judicial notice of information publically announced on a party's web site, so long as the web site's authenticity is not in dispute and it is capable of accurate and ready determination." *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 Fed.Appx. 223, 227 (4th Cir. 2013) (citing Fed. R. Evid. 201(b); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("it is not uncommon for courts to take judicial notice of factual information found on the world wide web.")).

The webpage supplied by PDR is from PDR's "About Us" website. The printout notes that PDR "provides healthcare professionals multichannel access to important drug information: the [Physicians' Desk Reference], the most recognized drug information reference available in the U.S." Def's. Req. for Judicial Notice Ex. 1, ECF No. 18-1. Plaintiff does not dispute the authenticity

of the printout from PDR's website, and the information contained in the printout is capable of accurate and ready determination. Accordingly, the Court takes judicial notice of the printout from PDR's website.

Moreover, during oral argument, Plaintiff did not dispute Defendants' description of the reference book or of PDR itself as an informational resource which is free to recipients and that PDR the company does not sell the reference or sell anything in the reference.

### B. The Motion to Dismiss

PDR argues the Class Action Complaint should be dismissed because the sole fax at issue in this TCPA action is not an advertisement as a matter of law. PDR Network maintains the fax is not an advertisement because it (1) does not offer anything for purchase or sale, and (2) its primary purpose is to inform members, not sell a product or service. Defs' Memo. Supp. Mot. Dismiss 7, ECF No. 19.

In general, the TCPA forbids a person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). "Unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission, in writing or otherwise." 47 U.S.C. § 277(a)(5). "An advertisement is any material that promotes the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit." *Sandusky Wellness Ctr., LLC v. Medco Health Sols.*, 788 F.3d 218, 222 (6th Cir. 2015) (citing 47 U.S.C. § 227(a)(5); *Advertisement*, BLACK'S LAW DICTIONARY (10th ed.)); *see also N.B. Indus. v. Wells Fargo Co.*, 465 F.App'x. 640, 642 (9th Cir. 2012) (citing *Commerce* THE AMERICAN HERITAGE DICTIONARY (3d ed. 1994) ("To be commercially available within the meaning of [TCPA], a good

or service must be available to be bought or sold (or must be a pretext for advertising a product that is so available."). As such, in order for an unsolicited fax to become an advertisement the fax must have a commercial aim.

Case law from other federal courts likewise interpret the TCPA to require a commercial element to find that a fax is an advertisement. The Ninth Circuit Court of Appeals found that the subject of an unsolicited fax was not an advertisement because the subject of the fax—an award— "is not commercially available and, therefore, the description of the award, the application to apply for it, and the text encouraging recipients to apply are not unsolicited advertisements within the meaning of the [TCPA]." *N.B. Indus.*, 465 F.App'x. at 642.

Other district courts have held that where the sender of an unsolicited fax had nothing to sell, even if offering a good or service, the fax was not an advertisement. *See Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, No. 3:14-cv-405, 2015 WL 144728, at *5 (D. Conn. Jan. 12, 2015) (finding that a fax sent by a drug manufacturer offering a free seminar that addressed a disorder for which the manufacturer was developing a drug but which was not yet available for sale was not an advertisement); *Phillips Randolph Enters., LLC. v. Adler-Weiner Research Chicago, Inc.*, 526 F.Supp.2d 851, 853 (N.D. Ill. 2007) (finding a fax notifying the recipient of a new research study on health care program was not an advertisement); *Ameriguard Inc. v. Univ of Kan. Medical Ctr.*, No. 06-0369-CV, 2006 WL 1766812, at *1 (W.D. Mo. Jun. 23, 2006) (finding a fax seeking participants in a clinical research trial not an advertisement because there was no "commercial availability" of any goods or services). "Indeed, the potential to gain some benefit from sending information, without the presence of additional commercial statement in the message, is insufficient to transform an informational message to an advertisement."

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-2132, 2013 WL 486207, at \*4 (D.N.J. Feb. 6, 2013).

In light of this raft of authority, the single fax at issue here is not an "advertisement" as defined by the TCPA. The fax certainly offers a good to Plaintiff but neither the fax nor PDR exhibit a commercial aim. The fax offers, for free, a reference book that contains information about prescription drugs. PDR does not sell prescription drugs, nor does it sell the reference book. The essential commercial element of an advertisement is missing from the fax; that is, there is no "hope to make a profit" from the offer and distribution of the reference book. *Sandusky*, 788 F.3d at 222. Moreover, although it is *possible* that PDR accrues some commercial benefit from distribution of the reference book, Plaintiff has not alleged any facts, other than a conclusory recitation of the elements of a TCPA claim, that plausibly indicates that PDR gains financially from the distribution of the reference book beyond speculative or ancillary gains. *See Twombly*, 550 U.S. at 555–56 (finding the complaint must contain "enough facts to state a claim to relief that is plausible on its face."); *Janssen Pharms., Inc.*, 2013 WL 486207, at \*4 ("whether the sender will ultimately obtain an ancillary commercial benefit from sending an informational message does not alter [the fact that the fax is not an advertisement].". In light of the information properly before the Court, the fax sent is not commercial in nature and therefore is not an advertisement.

Plaintiff strenuously urges this Court to adopt the Federal Communications Commission's ("FCC") order interpreting the TCPA's definition of "unsolicited advertisement." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3814 (2006). Plaintiff argues that the FCC order creates a presumption that any fax that offers free services or goods is an advertisement and PDR's fax offers a free good and should therefore be considered an advertisement. *See id.* Plaintiff further

contends that the Hobbs Act requires this Court to adopt the FCC's order. *See* 28 U.S.C. § 2342(1). Regardless of whether Plaintiff's interpretation of the FCC order is correct, Plaintiff is mistaken about the effect of the Hobbs Act.

The Hobbs Act does not require a federal court to adopt an FCC interpretation of the TCPA. The Hobbs Act vests exclusive jurisdiction to "enjoin, set aside, suspend, or to determine the validity of all final orders of the [FCC]" in the Circuit Courts of Appeals. *Id.* Neither party in this case has challenged the validity of the FCC's interpretation of the TCPA. If they had, this Court would lack the jurisdiction to decide the case. *See FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984). Indeed, for the purposes of this case, the Court presumes the FCC's order is valid.

Nonetheless, the order's validity does not, *ipso facto*, bind the Court to defer to the FCC's interpretation of the TCPA. The Court is not obliged to defer to the FCC's interpretation of an unambiguous statute. *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005); *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843 (1984). The TCPA defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). This definition is clear and easy to apply. *See Sandusky*, 788 F.3d at 223; *Janssen Pharms., Inc.*, 2013 WL 486207, at *3. Thus, FCC's interpretation of the TCPA is not due "substantial deference," *see Chevron*, 467 U.S. at 843–44, and in light of the clarity of the TCPA and case law applying it, the Court declines to defer to the FCC's interpretation.

Nonetheless, even if the Court were to defer to the FCC's interpretation, a careful reading of the section cited by Plaintiff further supports this Court's decision. The FCC concludes that "facsimile messages that promote goods or services, even at no cost, . . . are unsolicited

advertisements under the TCPA's definition." 21 F.C.C. Rcd. at 3814. According to the FCC's interpretation, the offending message must "promote goods or services." "Promote" is defined as "[t]o publicize or advertise . . . so as to increase sales." *Promote*, Oxford English Dictionary (3d ed. 2007). Or "to present (merchandise) for buyer acceptance through advertising, publicity, or discounting." *Promote*, Merriam-Webster Dictionary, http://www.merriam-webster.com/ dictionary/promote?utm_campaign=sd&utm_medium=serp&utm_source=jsonld. "Promote" has an explicit commercial nature, meaning that faxes that offer free goods or services must aim, through those goods and services, to garner a buyer's acceptance or attempt to increase sales. The fax here cannot be read to "promote" anything other than information.

Indeed, to define promote to have a commercial nature harmonizes the FCC interpretation with the plain meaning of the TCPA. The TCPA unequivocally defines "unsolicited advertisement" as commercial in nature. 47 U.S.C. § 277(a)(5). The plain meaning of "promote" likewise has a commercial aim. To read the FCC interpretation in any other way would read "commercial" out of the TCPA's definition of "unsolicited advertisement"—a clear abdication of elementary statutory construction. *See United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (quoting *Nat'l Labor Relations Bd. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937); *Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883)) ("The cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible, to every clause and word of a statute.").

The FCC then goes on to explain its rationale for its characterization of faxes that promote free goods and services. It explains "[i]n many instances . . . 'free' publications are often part of an overall marketing campaign to sell property, goods, or services." 21 F.C.C. Rcd. at 3814. The FCC's guidance makes it clear that the evil to be combatted are faxes that are either overtly

commercial in nature, meaning they directly offer something for sale, or are a pretext for a commercial transaction that will inevitably follow from the fax. *See Drug Reform Coordination Net. V. Grey House Pub.*, 106 F. Supp. 3d 9, 13 (D.D.C. 2013) (holding that a fax that was not an unsolicited advertisement on its face was nonetheless an advertisement because three direct solicitation emails followed). The TCPA, as already explained, seeks to curtail faxes with a commercial nature. To read the FCC's guidance as a blanket ban on any fax that offers a free good or service without any commercial aspect either directly or indirectly obviates the eminently rational purpose to the FCC's guidance and strips essential meaning from the TCPA.

A plain reading of the TCPA and the FCC interpretation demonstrates that they intend to curtail the transmission of faxes with a commercial aim. Plaintiff's interpretation that any fax that offers a free good or service is barred by the statute is too broad and cannot be borne by the TCPA or the FCC interpretation.

The Court need not reach the disputed and thorny[1] issue of whether the TCPA is a remedial statute and if it should be read broadly or plainly. This Opinion and Order finds that the fax at issue is clearly not an advertisement, rendering the dispute over the remedial nature of the statue moot.

In sum, the TCPA prohibits unsolicited advertisements sent via fax. The TCPA unambiguously requires a fax to be commercial in nature to be considered an advertisement. PDR's fax neither offers anything for sale, nor does PDR plausibly benefit commercially from the free

---

[1] *See, e.g.*, *Gager v. Dell Fin. Servs, LLC.*, 727 F.3d 265, 271 (3d Cir. 2013) (finding TCPA remedial); *Hooters of Augusta v. Am. Glob. Ins. Co.*, 272 F.Supp.2d 1365, 1376–77 (S.D. Ga. 2003) (finding TCPA to be punitive); *see also Sandusky*, 788 F.3d at 224 (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 364–66 (2012)) ("Why interpret a statute's language broadly or narrowly (as opposed to just reasonably or fairly)? And since all statutes remedy what's seen as a problem, which statutes do *not* deserve broad construction?") (emphasis in original).

distribution of the Physicians' Desk Reference. Accordingly, PDR's fax is not commercial in nature and therefore not an advertisement as defined by the TCPA.

### IV.    Conclusion

For the above reasons, the Court **GRANTS** PDR Network's Motion to Dismiss the Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6), and **GRANTS** the Motion for Judicial Notice.

The Court **DIRECTS** the Clerk to send a copy of this Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        September 30, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE