## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT HUNTINGTON

| | |
|---|---|
| CARLTON & HARRIS CHIROPRACTIC, INC., a West Virginia corporation, individually and as representative of a class of similarly-situated persons,<br><br>                Plaintiff,<br><br>     vs.<br><br>PDR NETWORK, LLC, PDR DISTRIBUTION LLC, PDR EQUITY, LLC and JOHN DOES 1-10,<br><br>                Defendants. | Civil Action No. 3:15-cv-14887 (RCC)<br><br>CLASS ACTION |

### DEFENDANTS PDR NETWORK, LLC, PDR DISTRIBUTION, LLC, AND PDR EQUITY, LLC'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS <u>ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)</u>

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................3

      A.    This Court Should Again Conclude the Statutory Definition of an "Advertisement" is Unambiguous, and the 2006 FCC Opinion is Not Due any Deference .................................................................................3

      B.    The FAC Fails to Plausibly Allege the Fax is an "Advertisement" on its Face .................................................................................................4

            1.    The FAC Does Not Identify a "Commercially Available" Good or Service Offered by PDR Network that Plaintiff Can Purchase .............................................................................5

            2.    Courts Have Rejected Plaintiff's Argument that Merely Calling Public Attention to a Good or Service is Sufficient to Convert an Informational Fax into an "Advertisement" Absent any Offer to Sell a Good or Service ....................................5

      C.    The FAC Does Not Plausibly Allege the Fax is an "Advertisement" under the 2006 FCC Opinion, and Plaintiff's Reading of the FCC's Opinion as Creating a *Per Se* Rule is not Due *Skidmore* (or Any) Deference ...........................................................11

      D.    The 2006 FCC Opinion Does Not Create a Rebuttable Presumption all Faxes Discussing Free Goods or Services are a "Pretext" to Advertising or are Part of an "Overall Marketing Plan," and is not Entitled to *Skidmore* Deference ...............................................................13

      E.    Plaintiff has Mischaracterized PDR Network's Constitutional Avoidance Argument as a Direct Constitutional Challenge to the TCPA ......................................................................................................16

CONCLUSION.................................................................................................18

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ambassador Animal Hosp., Ltd. v. Elanco Animal Health, Inc.*,
  2021 U.S. Dist. LEXIS 30268 (N.D. Ill. Feb. 18, 2021) ....................................................5, 10

*Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc.*,
  2006 U.S. Dist. LEXIS 42552 (W.D. Mo. June 23, 2006) ............................................. 13-14

*Arwa Chiropractic, P.C. v. Med.-Care Diabetic & Med. Supplies, Inc.*,
  2019 U.S. Dist. LEXIS 22087 (N.D. Ill. Feb. 11, 2019) .........................................................9

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
  140 S. Ct. 2335 (2020) ...........................................................................................................17

*Brzonkala v. Va. Polytechnic Inst. & State Univ.*,
  169 F.3d 820 (4th Cir. 1999) ...................................................................................................6

*Chevron U.S.A., Inc. v. NRDC*,
  467 U.S. 837 (1984).................................................................................................................4

*Clark v. Martinez*,
  543 U.S. 371 (2005).................................................................................................................13

*Dang v. XLHealth Corp.*,
  2011 U.S. Dist. LEXIS 12166 (N.D. Ga. Feb. 7, 2011) .........................................................11

*Destination Ventures Ltd. v. FCC*,
  46 F.3d 54 (9th Cir. 1995) .......................................................................................................17

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g., Inc.*,
  106 F. Supp. 3d 9 (D.D.C. 2015) ............................................................................................15

*Edelsberg v. Vroom, Inc.*,
  2018 U.S. Dist. LEXIS 50420 (S.D. Fla. Mar. 27, 2018).......................................................10

*EEOC v. City of Norfolk Police Dep't*,
  45 F.3d 80 (4th Cir. 1995) .......................................................................................................6

*Exclusively Cats Veterinary Hosp., P.C. v. M/A/R/C Research, LLC*,
  444 F. Supp. 3d 775 (E.D. Mich. 2020)................................................................................ 7-8

*Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*,
  858 F.3d 1362 (11th Cir. 2017) ...............................................................................................8

*Gibson Brands, Inc. v. Armadillo Distribution Enters.*,
   2020 U.S. Dist. LEXIS 130943 (E.D. Tex. July 24, 2020)......................................9

*Gibson v. Owens*,
   2018 U.S. Dist. LEXIS 50419 (D.N.J. Mar. 27, 2018)..........................................18

*Humphreys v. PPL Elec. Utils. Corp.*,
   2014 U.S. Dist. LEXIS 154819 (E.D. Pa. 2014) ...................................................18

*Hurley v. Messer*,
   2018 U.S. Dist. LEXIS 171588 (S.D. W. Va. Oct. 4, 2018) .................................16

*Hurley v. Wayne Cty. Bd. of Educ.*,
   2017 U.S. Dist. LEXIS 86345 (S.D. W. Va. June 6, 2017)....................................5

*In re Monitronics Int'l, Inc.*,
   2015 U.S. Dist. LEXIS 56514 (N.D. W. Va. Apr. 30, 2015) .................................12

*Katz v. Focus Forward LLC*,
   2021 U.S. Dist. LEXIS 66861 (S.D.N.Y. Apr. 6, 2021)......................................4, 8

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019)..........................................................................................12

*Krantz v. Prudential Invs. Fund Mgmt. LLC*,
   305 F.3d 140 (3d Cir. 2002)..................................................................................18

*Long v. United States*,
   199 F.2d 717 (4th Cir. 1952) .................................................................................9

*Machonis v. Universal Survey Ctr., Inc.*,
   2020 U.S. Dist. LEXIS 31330 (S.D.N.Y. Feb. 21, 2020).................................7, 14

*Mauthe v. Optum, Inc.*,
   925 F.3d 129 (3d Cir. 2019).............................................................................4-5, 8

*McCravy v. Metro. Life Ins. Co.*,
   650 F.3d 414 (4th Cir. 2011) .................................................................................6

*Mey v. Venture Data, LLC*,
   245 F. Supp. 3d 771 (N.D. W. Va. 2017) .............................................................12

*N.B. Indus., Inc. v. Wells Fargo & Co.*,
   465 F. App'x 640 (9th Cir. 2012) .........................................................................14

*Nahigian v. Juno-Loudoun, LLC*,
   677 F.3d 579 (4th Cir. 2012) .................................................................................4

*O'Connor v. Donaldson*,
   422 U.S. 563 (1975)..................................................................................................6

*Orrington v. Scion Dental, Inc.*,
   2019 U.S. Dist. LEXIS 173845 (N.D. Ill. Oct. 7, 2019).......................................11

*P&S Printing LLC v. Tubelite, Inc.*,
   2015 U.S. Dist. LEXIS 93060 (D. Conn. July 17, 2015)...................................5, 15

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,
   781 F.3d 1245 (11th Cir. 2015) ...........................................................................13

*Payne v. DeLuca*,
   2006 U.S. Dist. LEXIS 89251 (W.D. Pa. 2006) ..................................................18

*Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*,
   526 F. Supp. 2d 851 (N.D. Ill. 2007) ...................................................................14

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*,
   847 F.3d 92 (2d Cir. 2017)............................................................................ *passim*

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
   2013 U.S. Dist. LEXIS 79557 (D.N.J. June 6, 2013) ...........................................15

*Physicians HealthSource, Inc. v. MultiPlan Servs., Corp.*,
   2013 U.S. Dist. LEXIS 133397 (D. Mass. Sept. 18, 2013) ............................. 13-14

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015).............................................................................................17

*Robert Mauthe, MD., P.C. v. Nat'l Imaging Assocs., Inc.*,
   767 Fed. Appx. 246 (3d Cir. 2019)...............................................................8, 14-15

*Robert W. Mauthe, MD., P.C. v. Nat'l Imaging Assocs., Inc.*,
   2018 U.S. Dist. LEXIS 72906 (E.D. Pa. Apr. 25, 2018) ......................................14

*Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*,
   2020 U.S. Dist. LEXIS 94513 (E.D. Pa. May 29, 2020) .................................... 4-5

*Romero v. Barr*,
   937 F.3d 282 (4th Cir. 2019) ...............................................................................12

*Sandusky Wellness Ctr., LLC. v. Medco Health Sols., Inc.*,
   788 F.2d 218 (6th Cir. 2015) .........................................................................2, 10-11

*SEC v. Sloan*,
   436 U.S. 103 (1978).............................................................................................12

iv

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    909 F.3d 635 (4th Cir. 2018) ................................................................12

*Smith v. Blue Shield of Cal. Life & Health Ins. Co.*,
    228 F. Supp. 3d 1056 (C.D. Cal. 2017) ...............................................10

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ..............................................................................17

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) ..............................................................................12

*United States HHS v. Fed. Labor Relations Auth.*,
    983 F.2d 578 (4th Cir. 1992) ..................................................................6

*Vallianos v. Schultz*,
    2019 U.S. Dist. LEXIS 174729 (W.D. Wash. Oct. 8, 2019) ................14

*Webster v. Luther*,
    163 U.S. 331 (1896) ................................................................................4

**Statutes**

47 U.S.C. § 227(a)(5) ...............................................................................4, 9

**Other Authorities**

ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF
    LEGAL TEXTS 147 (2012) ........................................................................9

MERRIAM-WEBSTER DICTIONARY – Advertise ...........................................7

MERRIAM-WEBSTER DICTIONARY – Promote .............................................7

U.S. CONST., Amend. I ........................................................................17-18

COME NOW, Defendants PDR Network, LLC, PDR Distribution, LLC, and PDR Equity, LLC (collectively, "PDR Network"), by and through their counsel, hereby submit this Reply in further support of their *Motion to Dismiss* pursuant to Rule 12(b)(6) (the "Motion"), ECF No. 85, with respect to Plaintiff Carlton & Harris Chiropractic, Inc.'s ("Plaintiff") *First Amended Class Action Complaint* (the "FAC"). ECF No. 82. A Reply is needed to correct the fundamental errors and legal shortcomings in Plaintiff's *Response in Opposition* (the "Response"). ECF No. 86.

## INTRODUCTION

Plaintiff's Response does not undermine the merits or validity of this Court's prior ruling that the Fax is "not an 'advertisement' as defined by the TCPA." ECF No. 33 at 6. As a preliminary matter, the Fourth Circuit remanded this case so this Court could decide "what level of deference (if any)" it is "inclined" to give the 2006 FCC Opinion. ECF No. 66. at 10. PDR Network explained how a deference analysis comes into play *only if* the statutory language is ambiguous. ECF No. 85 at 7-8. PDR Network further showed that the statutory language is unambiguous. Plaintiff contends otherwise – but does not succeed in casting doubt on the solid reasoning underlying this Court's 2016 opinion. Because the statute is unambiguous, this Court need not proceed further with the *Skidmore* analysis; it should reaffirm its prior decision to dismiss.

The Response presents four uncompelling arguments. First, Plaintiff claims the FAC has "plausibly" alleged the Fax is an "advertisement" on its face without needing to resort to the 2006 FCC Opinion. Plaintiff is wrong. Plaintiff specifically contends the dictionary definition of "advertise" is not limited to efforts to sell something for a profit, but fails to engage with the many decisions in recent years on the district and circuit court level that have resoundingly held the term "advertisement," as used in the TCPA, *does* necessarily require an attempt to sell a good or service.

Plaintiff next attempts to inject ambiguity into the otherwise "clear" definition of "advertisement" by arguing the term "commercial" does not necessarily modify "quality." Under Plaintiff's reading, *any* discussion of the "quality" of the 2014 eBook would automatically mean the Fax is an "advertisement." Again, this premise has been repeatedly rejected – including by this Court, which expressly explained how "commercial" modifies *both* "availability" *and* "quality." Plaintiff's remaining efforts to minimize *Sandusky Wellness Ctr., LLC. v. Medco Health Sols., Inc.*, 788 F.2d 218 (6th Cir. 2015), on procedural or other grounds similarly fall flat.

Second, Plaintiff argues the Fax is an "advertisement" under the so-called "free-goods-or services rule" in the 2006 FCC Opinion. Plaintiff reverts to its misguided reading of the 2006 FCC Opinion to be a "*per se*" rule and argues this interpretation is entitled *Skidmore* deference. Notably, this *per se* formulation has been rejected by this Court, other courts, and is not currently the law anywhere. In fact, the FCC itself declined to endorse a *per se* reading in its 2019 *amicus* brief to the Fourth Circuit on remand from the U.S. Supreme Court. The FCC pointedly declined to argue that *all* faxes offering goods or services for free are "advertisements," and instead took the position that "*many* 'messages that promote goods or services even at no cost' fit" the statute's definition of "unsolicited advertisement." *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, Case No. 16-2185, Doc. 63-1 at 20 (4th Cir.) (emphasis added). This defeats any argument for deference to the *per se* reading – there is no basis for a court to defer to an interpretation of agency guidance that the agency itself does not accept. Moreover, Plaintiff fails to counter (or even address) PDR Network's cited authority regarding the shortcomings of the 2006 FCC Opinion and the FCC's inadequate consideration of these issues; Plaintiff instead *again* relies on vacated and/or inapplicable court decisions (and the TCPA's purported "remedial" nature) to argue for *Skidmore* deference. Plaintiff cannot rehabilitate the 2006 FCC Opinion so that it deserves any deference.

Third, Plaintiff argues this Court should adopt the Second Circuit's "rebuttable presumption" formulation from *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92 (2d Cir. 2017), to allow for liability under a "pretext" theory. As PDR Network already explained, however, even under *Boehringer*, the fax must still "promote" something for sale – which the instant Fax does not. Moreover, both the Third and Seventh Circuits have declined to apply the "expansive" "pretext" theory in *any* TCPA fax case. ECF No. 85 at 19-20. This Court should follow those decisions. Regardless, the "pretext" theory has no place here, given the dissimilarity between free-seminar faxes and the instant Fax.

Finally, Plaintiff mischaracterizes PDR Network's constitutional *avoidance* argument as a direct challenge to the constitutionality of the TCPA – which it is not. ECF No. 86 at 18-19. PDR Network instead relies on the well-established statutory construction principle that in choosing between possible readings of a statute, a court should avoid a construction that raises constitutional concerns if another is reasonably available. Plaintiff attempts to sidestep this principle by citing cases that have upheld the TCPA against a First Amendment challenge – but ignores that those cases relied on an understanding the TCPA is a speaker-neutral and content-neutral statute. Contrary to that understanding, Plaintiff suggests (and fought to amend its *Complaint* to suggest) that PDR's liability under the TCPA turns on its status as a for-profit entity. That construction of the TCPA would obviously introduce novel constitutional concerns, which this Court should avoid by again rejecting Plaintiff's misguided statutory arguments. This Court should dismiss the FAC.

## ARGUMENT

A.    **This Court Should Again Conclude the Statutory Definition of an "Advertisement" is Unambiguous, and the 2006 FCC Opinion is Not Due any Deference.**

PDR Network's Motion detailed how the first step in any deference analysis – whether under *Chevron* or *Skidmore* – is to "ask if the statute's meaning is plain." *See* ECF No. 85 at 8

(citing *Nahigian v. Juno-Loudoun, LLC*, 677 F.3d 579, 587 (4th Cir. 2012)).  If the plain meaning of the statute is unambiguous, this ends the deference analysis by "foreclosing the use of [agency] guidelines as an interpretive aid."  *Nahigian*, 677 F.3d at 587 n.6.  Such is the case here.  Indeed, all that has changed since 2016 – *i.e.*, when this Court first held the TCPA's definition of an "advertisement" was "clear and easy to apply," ECF No. 33 at 7 – is that other courts have joined in this same reading of the statute.  *Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, 2020 U.S. Dist. LEXIS 94513, at *53 (E.D. Pa. May 29, 2020) ("Congress spoke clearly in defining the term 'unsolicited advertisement'[; it] was not silent or ambiguous in dictating that an unsolicited advertisement requires a commercial component.");  *Katz v. Focus Forward LLC*, 2021 U.S. Dist. LEXIS 66861, at *7-8 (S.D.N.Y. Apr. 6, 2021) (statutory definition provides a "useful standard").

Plaintiff does not challenge this point – nor could it.  That a statute must first be ambiguous before a court will consider whether to afford deference to an agency's interpretation goes back over 125 years.  *See Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843 n.9 (1984) (citing *Webster v. Luther*, 163 U.S. 331, 342 (1896)).  Applying this foundational legal principle here leads to the inescapable conclusion that the definition of an "advertisement" is as "unambiguous" now as it was when this Court first so held.  *See* ECF No. 33 at 7.  For this reason alone, the 2006 FCC Opinion is not due any deference and this Court should again dismiss Plaintiff's TCPA claim.

B.     **The FAC Fails to Plausibly Allege the Fax is an "Advertisement" on its Face.**

It is undisputed that the TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services."  47 U.S.C. § 227(a)(5).  Properly applied, this definition does *not* describe the instant Fax.  Nor should this Court further enable Plaintiff's transparent goal of "distort[ing] the meaning of 'advertisement' to accommodate [its] case."  *See, e.g., Mauthe v. Optum, Inc.*, 925 F.3d 129, 135 (3d Cir. 2019).

1.      **The FAC Does Not Identify a "Commercially Available" Good or
Service Offered by PDR Network that Plaintiff Can Purchase.**

Noticeably absent from Plaintiff's allegations is any mention of the specific "commercially available" good or service in the Fax being promoted for sale to Plaintiff.  ECF No. 85 at 17. Plaintiff has already conceded PDR Network "does not sell the reference or sell anything in the reference" – so that path is foreclosed.  ECF No. 33 at 4.  Even after amendment of the initial *Complaint*, the only reasonable conclusion is *there is no good or service* promoted within the "four corners" of the Fax or alleged in the FAC.  *Hurley v. Wayne Cty. Bd. of Educ.*, 2017 U.S. Dist. LEXIS 86345, at *14 (S.D. W. Va. June 6, 2017) (Chambers, J.) (noting that if plaintiff "had more evidence" to create liability she "would do well to include them in her pleadings"; "[t]he Court will not fill in the blanks for her.").  That a fax does not promote anything for sale "on its face" has alone been grounds for numerous courts to grant dismissal.  *See Millennium*, 2020 U.S. Dist. LEXIS 94513, at *32; *Optum*, 925 F.3d at 133; *Ambassador Animal Hosp., Ltd. v. Elanco Animal Health, Inc.*, 2021 U.S. Dist. LEXIS 30268, at *8 (N.D. Ill. Feb. 18, 2021); *see also P&S Printing LLC v. Tubelite, Inc.*, 2015 U.S. Dist. LEXIS 93060, at *12 (D. Conn. July 17, 2015) (because the "fax's primary purpose, on its face, was to communicate information," it "d[id] not constitute an 'advertisement' as a matter of law, because it does not tend to propose a commercial transaction and does not appear on its face to have been sent based on a commercial pretext").  Despite this obvious shortcoming, Plaintiff persists in arguing that the Fax is "plausibly" an "advertisement" "on its face."  *See* ECF No. 86 at 6-9.  Plaintiff's erroneous interpretation should be rejected.

2.      **Courts Have Rejected Plaintiff's Argument that Merely Calling
Public Attention to a Good or Service is Sufficient to Convert an
Informational Fax into an "Advertisement" Absent any Offer to
Sell a Good or Service.**

Having failed in its attempt to identify a single "commercially available" good or service Plaintiff may purchase after having received the Fax, Plaintiff next argues that because the Fax

"make[s] known" and "call[s] public attention" to the 2014 eBook, this somehow transforms the Fax into an "advertisement."  ECF No. 86 at 7.  Plaintiff ignores the current state of the law.

As support for this argument, Plaintiff relies exclusively on Judge Thacker's dissent in *PDR Network II*.  First, as a dissenting opinion – let alone one that was part of a *now vacated panel decision* – this analysis is unquestionably not binding on this Court.  *See Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 169 F.3d 820, 878 (4th Cir. 1999) ("views in dissent, of course, are not binding authority"); ECF No. 79 at 10 n.8 (citing *United States HHS v. Fed. Labor Relations Auth.*, 983 F.2d 578, 583 (4th Cir. 1992) (Murnaghan, J., concurring in part, dissenting in part) (analysis no longer controlling law after *vacatur*)).[1]  Notably, Plaintiff cites no other case.

Second, Judge Thacker's dissenting opinion does not support Plaintiff's ambiguity argument or reflect the current legal landscape.  Plaintiff argues Judge Thacker was "correct"[2] that the term "advertis[ing] does not definitively implicate a profit seeking motive."  ECF No. 86 at 7.  Purporting to rely on a "common dictionary definition" of "advertise," Plaintiff contends merely

---

[1]  Plaintiff's Response later asserts *PDR Network II* "remains good law with respect to the meaning of" the 2006 FCC Opinion.  ECF No. 86 at 10.  This is not so.  At best, the Fourth Circuit has observed the "precedential effect of [a] vacated decision 'is not at all clear.'"  *McCravy v. Metro. Life Ins. Co.,* 650 F.3d 414, 419-20 (4th Cir. 2011) (declining to determine whether court is bound by reasoning in prior decision reversed by the U.S. Supreme Court) (citing *EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80, 83 n.4 (4th Cir. 1995)).  However, most other circuits, as well as the U.S. Supreme Court, have all explained a "decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect, leaving this Court's opinion and judgment as the sole law of the case" – which is what happened here.  *O'Connor v. Donaldson*, 422 U.S. 563, 578 n.12 (1975); ECF No. 79 at 10 n.7.  Moreover, even if Plaintiff were correct that *PDR Network II* had some "precedential effect," this supposed "effect" would still not apply to a dissent.

[2]  Ironically, as discussed in Section C, *infra*, the rest of Judge Thacker's dissent explained how, "in [her] view, the 2006 FCC [Opinion] makes clear that even faxes that purport to have no commercial aim on their face must nonetheless have a commercial aim in order to be an 'advertisement' under the TCPA."  ECF No. 40 at 26.  Judge Thacker thus went on to *reject* Plaintiff's *per se* reading of the 2006 FCC Opinion, *id.* at 27, and further opined Plaintiff had failed to state a claim whereby it "has not even met [its] minimal burden" to allege the "contents of the eBook relate to [PDR Network's] business."  *Id.*  The same failure is present in the FAC as well.

making something known, or calling public attention to it, suffices to transform a fax into an "advertisement." *Id.* There are several fundamental flaws with this argument.

As an initial matter, Plaintiff ignores a critical component of its supposed "common dictionary definition" of "advertise" from Merriam-Webster. As seen from the third option, "advertise" also means: "to call public attention to especially by emphasizing desirable qualities *so as to arouse a desire to buy or patronize: PROMOTE*."[3] This naturally leads to the definition of the word "promote," which, in turn, includes the relevant definition: "to present (merchandise) *for buyer acceptance* through advertising, publicity, or discounting."[4] This Court is undoubtedly familiar with the importance of the word "promote" to this statutory analysis as well as the aforementioned definition from Merriam-Webster – having cited this resource in its 2016 opinion. ECF No. 36 at 8 ("The plain meaning of 'promote' likewise has a commercial aim."). Thus, Plaintiff's claim that the term "advertise" is "not limited to attempts to sell something for a profit" as a basis to expand the scope of TCPA liability is internally inconsistent and should be rejected.

Courts have recently cautioned against relying solely on definitions of words like "advertisement" or "advertising" in isolation – lest the TCPA be expanded beyond its reasonable, congressionally-mandated limits. *See Machonis v. Universal Survey Ctr., Inc.*, 2020 U.S. Dist. LEXIS 31330, at *18 (S.D.N.Y. Feb. 21, 2020) (cautioning against reliance on "particularly expansive, dictionary definitions of the word 'advertising,' for the proposition that 'advertising' means 'the action of calling something . . . to the attention of the public' that have not been incorporated into the statute by Congress, nor adopted by the regulating agency."); *Exclusively*

---

[3] *See* MERRIAM-WEBSTER DICTIONARY – Advertise, *available at* https://www.merriam-webster.com/dictionary/advertise (last visited May 9, 2021) (emphasis added).

[4] *See* MERRIAM-WEBSTER DICTIONARY – Promote, *available at* https://www.merriam-webster.com/dictionary/promote (last visited May 9, 2021) (emphasis added).

*Cats Veterinary Hosp., P.C. v. M/A/R/C Research, LLC*, 444 F. Supp. 3d 775, 784 (E.D. Mich. 2020) ("if the court were to consider one dictionary definition of 'advertisement' by itself, it could encapsulate all 'public notices.'  [A]pplying such a broad interpretation to the TCPA would be in conflict with *Sandusky* and FCC interpretive documents.") (citations omitted); *Katz*, 2021 U.S. Dist. LEXIS 66861, at *7-8 ("[T]he TCPA's statutory definition provides courts with a useful standard, keeping them from resorting to expansive dictionary definitions and subjective interpretations to discern the meaning of the word 'advertisement' under the TCPA.  Indeed, a thorough review of caselaw from neighboring circuits reveals that failure to adhere to the statutory language alters Congress's clear definition of the word 'advertisement' into 'a litigant's wishing well, into which, it sometimes seems, one may peer and find nearly anything he wishes.'") (citation omitted).  In *NIA*, the Third Circuit shared this Court's concern over the importance of limiting the TCPA, ECF No. 33 at 8-9, and noted an overbroad definition of the term "advertisement"– of the kind Plaintiff posits – would be "inconsistent with the statutory definition[.]"  767 F. App'x at 249.

PDR Network previously demonstrated how other circuits – in opinions both before and after *PDR Network II* – have reinforced the requirement that an "advertisement" must "promote goods or services to be bought or sold, and it should have profit as an aim."  ECF No. 85 at 14.  These same courts further held that the mere "action of drawing the public's attention to something" is insufficient *unless* the act is done to "promote its sale." *Id.* (citing *Optum,* 925 F.3d at 133 ("as we opined in *NIA*, '[a]dvertising is the action of drawing the public's attention to something *to promote its sale*.  So to be an ad, the fax must promote goods or services to be bought or sold, *and it should have profit as an aim*.') (emphasis added) (citing *Robert Mauthe, MD., P.C. v. Nat'l Imaging Assocs., Inc.,* 767 Fed. Appx. 246, 249 (3d Cir. 2019)); *Sandusky*, 788 F.3d at 222 (same); *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366 (11th

Cir. 2017) (same); *see also Arwa Chiropractic, P.C. v. Med.-Care Diabetic & Med. Supplies, Inc.*,
2019 U.S. Dist. LEXIS 22087, at *10-11 (N.D. Ill. Feb. 11, 2019) (observing the "mere fact [that
an item is available for purchase] cannot itself create an 'advertisement' when the fax does not
seek to induce a future sale of that product. *If so, absurdity would result*.") (emphasis added).

Third, Plaintiff erroneously expands the definition of "advertisement" in an unsupported
manner. Specifically, Plaintiff argues that assuming the term "commercial" "does not necessarily"
modify "quality" in Section 227(a)(5), the TCPA can be read to mean the Fax "advertises (*i.e.*,
makes known) the 'quality' of the 2014 eBook by stating it is 'trusted,' 'new,' 'convenient,' and
'FREE.'" ECF No. 86 at 7. Following traditional grammatical rules and canons of statutory
interpretation, the plain reading of the phrase "*commercial* availability or quality of any property,
goods, or services" should be read to mean the preceding adjective "commercial" modifies both
"availability" and "quality." *See* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE
INTERPRETATION OF LEGAL TEXTS 147 (2012) ("When there is a straightforward, parallel
construction that involves all nouns or verbs in a series, a prepositive . . . modifier normally applies
to the entire series.") (citing cases); *Long v. United States*, 199 F.2d 717, 719 (4th Cir. 1952)
(observing the "use of the adverb 'forcibly' before the first of the string of verbs . . . shows quite
plainly that the adverb is to be interpreted as modifying them all."); *see also Gibson Brands, Inc.
v. Armadillo Distribution Enters.*, 2020 U.S. Dist. LEXIS 130943, at *20 (E.D. Tex. July 24, 2020)
(court observed application of a modifier to one part of a series requires application to rest of the
series). And that is exactly how this Court interpreted this phrase following oral argument:

> Here, I think the paragraphs that describe these analogous situations
> where something is free make it clear that there's still a commercial aspect
> to that. *And I believe that the language of the statute and of the [2006]
> FCC [Opinion] requires that -- that commercial is an adjective that
> modifies both the availability as well as the quality.* And so I think that
> that requires some connection in the fax to a context of the fax that is

> connected to something commercial.  And commercial in its plain
> meaning is buying or selling, not stuff that's free.

See **Exhibit A**, 9/26/2016 Arg. Tr. at 25:15-23 (emphasis added).  This reading is still correct.

Lastly, Plaintiff wrongly accuses PDR Network of "fundamentally misconstru[ing]" *Sandusky*.  ECF No. 86 at 8.  Yet Plaintiff concedes *Sandusky* stands for the legal proposition that for TCPA liability to exist, a defendant must "have profit as an aim" – which was noticeably absent here based on the sole request in the Fax that Plaintiff merely indicate how many "free" digital copies of the eBook it wanted to "reserve."  *See* ECF No. 82-1.  As for Plaintiff's allegations about how PDR Network purportedly "benefit[s]" or "profit[s]" from the "sale of healthcare products and services referred to in the [F]ax," ECF No. 86 at 8 (quotations omitted), Plaintiff has repeatedly failed to identify any such "products and services."  And even if Plaintiff's vague and conclusory allegation that PDR Network "stand[s] to profit when a provider accepts a free copy" of the 2014 eBook were correct, this is the type of "speculative or ancillary gains" this Court, ECF No. 33 at 8, and others[5] have found insufficient to survive dismissal.  *See* ECF No. 85 at 14-15 (citing *Ambassador,* 2021 U.S. Dist. LEXIS 30268, at *11-12 ("ancillary, remote, and hypothetical economic benefit later on does not convert a . . . communication into a commercial solicitation.")).  Indeed, Plaintiff's further concession that PDR Network "does not sell the reference or sell anything in the reference" buttresses this Court's prior ruling that the Fax "neither offers anything for sale, *nor does PDR [Network] plausibly benefit commercially from the free distribution of the [PDR]*."  *See* ECF No. 33 at 4, 9-10 (emphasis added).  Whether the Fax is an advertisement

---

[5] *Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1068 (C.D. Cal. 2017) (courts should not rely on a sender's "overarching business model" to transform the stated purpose of their communications; "to hold otherwise . . . would transform practically *all* communication from any entity that is financially motivated and exchanges goods or services for money into . . . advertising, which would contravene the delineated definition[.]") (emphasis in original); *Edelsberg v. Vroom, Inc.*, 2018 U.S. Dist. LEXIS 50420, at *19 (S.D. Fla. Mar. 27, 2018) (same).

remains "a question of law." *Id.* at 16 (citation omitted).  As this Court rightly held in 2016, discovery is simply not needed to answer this question.

C.   **The FAC Does Not Plausibly Allege the Fax is an "Advertisement" under the 2006 FCC Opinion, and Plaintiff's Reading of the FCC's Opinion as Creating a *Per Se* Rule is not Due *Skidmore* (or Any) Deference.**

Plaintiff argues that, alternatively, the FAC plausibly alleges the Fax is an "advertisement" under the 2006 FCC Opinion.  ECF No. 86 at 9-10.  Plaintiff further asserts that its reading of the FCC's interpretation as creating a *per se* rule that faxes promoting "free goods or services" are automatically "advertisements" is entitled to *Skidmore* deference.  *Id.*  Plaintiff is wrong on the law as well as the residual effects of the FCC's non-binding guidance.  Indeed, even the majority in *Boehringer* refused to adopt a *per se* rule of the kind Plaintiff proposes.  847 F.3d at 96; *see also id.* at n.1 (collecting cases).  This Court should do the same.

Since the decision in *PDR Network II* was issued in 2018, no circuit has adopted a *per se* interpretation of the 2006 FCC Opinion.  Presented with the opportunity, district courts have consistently declined to do so.  *Orrington v. Scion Dental, Inc.*, 2019 U.S. Dist. LEXIS 173845, at *8-9 (N.D. Ill. Oct. 7, 2019) ("Unlike the Fourth Circuit, the Seventh Circuit has not yet weighed in on this issue.  Still, when presented with similar arguments in the past, most courts in this district have declined to implement a *per se* rule.") (citation omitted); *see also Dang v. XLHealth Corp.*, 2011 U.S. Dist. LEXIS 12166, at *10-11 (N.D. Ga. Feb. 7, 2011) ("For the FCC to then find, *per se*, that all free seminars violated the statute – without concern for whether the seminar promoted the commercial availability of goods and services – would exceed that agency's mandate[.]").

Plaintiff's argument that the reasoning in *PDR Network II* is "correct" due to the TCPA being a "remedial statute" also misses the mark.  ECF No. 86 at 10-11.  While some circuits have referred to the TCPA as "remedial," others have expressly *rejected* this proposition.  *Sandusky*, 788 F.3d at 224.  In fact, the Fourth Circuit held an agency may not impose a "more protective"

condition than the statute's "plain language" permits. *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 646 (4th Cir. 2018). Courts within the Fourth Circuit that have labeled the TCPA "remedial" have carefully qualified this assertion by explaining: "[a]t the same time, *a remedial purpose will not justify reading a provision more broadly than its language and the statutory scheme reasonably permit*." *See, e.g., Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 775 (N.D. W. Va. 2017) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979); *SEC v. Sloan*, 436 U.S. 103, 116 (1978)) (emphasis added) (quotations omitted); *see also In re Monitronics Int'l, Inc.*, 2015 U.S. Dist. LEXIS 56514, at *10 (N.D. W. Va. Apr. 30, 2015) (same).[6]

For this reason alone, Plaintiff's *per se* reading of the FCC Opinion is not entitled to *Skidmore* deference. ECF No. 86 at 11. As noted, the FCC declined to endorse the *per se* reading in its recent *amicus* brief to the Fourth Circuit. That should end the *Skidmore* debate because there is no basis to defer to an understanding of an agency's pronouncement that is being advocated by a private plaintiff – but not the agency itself. *See* Case No. 16-2185, Doc. 63-1 at 20 (4th Cir.).

In any event, Plaintiff's deference arguments lack merit. Plaintiff first claims the FCC's experience in interpreting and enforcing the TCPA should be "accorded deference." ECF No. 86 at 11. That is not the standard. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2443 (2019) (respect for agency's "technical expertise" is not unlimited). *PDR Network IV* explained that an agency's interpretation can be "unpersuasive because it represented an 'inconsistent' and 'stark departure' from "long-used practice," ECF No. 66 at 12 (citing *Romero v. Barr*, 937 F.3d 282, 297 (4th Cir. 2019)), or it was "'completely devoid of any statutory analysis' and made 'no effort to explain or justify'" the agency's position. *Id.* (citing *Sierra Club*, 909 F.3d at 645). Both situations are present here.

---

[6] As this Court observed in 2016, it need not reach the "disputed and thorny issue of whether the TCPA is a remedial statute and if it should be read broadly or plainly" because the Fax is "clearly not an advertisement." ECF No. 33 at 9. There is still no need to reach this "thorny" issue now.

Specifically, the FCC has repeatedly explained how communications offering goods and services that are not "commercially available" – because they are offered at no cost – are not "advertisements." *See* ECF No. 85 at 13. Plaintiff's only retort is to argue the examples PDR Network provided dealt with robocalls – not faxes – and that the FCC submitted an *amicus* brief in *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245 (11th Cir. 2015), about how the fax and robocall subsections of the TCPA "contain different language" and "treat voice calls and faxes differently." ECF No. 86 at 12. This argument lacks merit. Both Section 227(b)(2)(B) (regulating robocalls) and Section 227(b)(1)(C) (regulating fax transmissions) turn on the same defined statutory term: "unsolicited advertisement." That term must therefore have the same meaning in both applications. "To give these same words a different meaning for each category would be to invent a statute rather than interpret one." *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

Finally, Plaintiff criticizes PDR Network for asserting the Fax is "informational" without applying the considerations identified in the 2006 FCC Opinion. ECF No. 86 at 13. This argument is clearly mistaken. The 2006 FCC Opinion (which is *non-binding* in any event) did not attempt to set out an exhaustive list of factors. Courts, moreover, have found faxes to be "informational" in their own right. *Physicians HealthSource, Inc. v. MultiPlan Servs., Corp.*, 2013 U.S. Dist. LEXIS 133397, at *4 (D. Mass. Sept. 18, 2013) (fax "provides information concerning services already available to Dr. Elwert"); *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc.*, 2006 U.S. Dist. LEXIS 42552, at *3-4 (W.D. Mo. June 23, 2006) (dismissing claim based on fax's informational nature without reference to 2006 FCC Opinion, issued two months prior).

D.  **The 2006 FCC Opinion Does Not Create a Rebuttable Presumption all Faxes Discussing Free Goods or Services are a "Pretext" to Advertising or are Part of an "Overall Marketing Plan," and is not Entitled to *Skidmore* Deference.**

Plaintiff argues this Court should in the second alternative adopt the "pretext" theory from the Second Circuit's *Boehringer* decision to force this case into costly, needless discovery. Several

circuits have already rejected this "expansive" theory.  *See* ECF No. 85 at 19-20.  Moreover, as it relates to *Skidmore* deference, and as Judge Leval – the author of the concurring *Boehringer* opinion – himself observed, the FCC "did not explain its reasons" for such a position.  *Id.* at 11.

Plaintiff claims "other courts" have "denied motions to dismiss at the pleading stage when presented with a fax offering free good or services," ECF No. 86 at 15, but in each of those cases the subject fax promoted a "free seminar."  As PDR Network explained, the instant Fax – which only asks the recipient how many "free" copies of the eBook it wants to "reserve" – is distinct from "free seminar" fax cases, like *Boehringer*, where the recipient is invited to attend a separate event at which products may be sold.  ECF No. 85 at 20; ECF No. 79 at 9 n.6.  This rationale cannot properly be applied where, as here, a fax is instead self-contained and knowable.  Regardless, numerous courts have dismissed TCPA fax cases – including "free seminar" cases – at the pleadings stage where the fax did not qualify as an "advertisement."[7]  Indeed, under Plaintiff's theory, a court could *never* dismiss a TCPA fax case on the pleadings because all a plaintiff need do is vaguely allege a "pretext" existed.  Courts – including this Court – have wisely

---

[7]  *See Machonis*, 2020 U.S. Dist. LEXIS 31330, at *15-16 (citing *Robert W. Mauthe, MD., P.C. v. Nat'l Imaging Assocs., Inc.*, 2018 U.S. Dist. LEXIS 72906, at *5 (E.D. Pa. Apr. 25, 2018) (faxed survey that did not seek to "initiate a new [commercial] transaction" was not an advertisement under the TCPA), *aff'd sub nom. NIA*, 767 F. App'x 246; *Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (fax that invited recipients to participate in research study in exchange for $200 honorarium was not an advertisement); *Ameriguard*, 2006 U.S. Dist. LEXIS 42552, at *3-4 (dismissing TCPA claim at 12(b)(6) stage where fax announced clinical drug trial and sought participants, *aff'd*, 222 F. App'x 530 (8th Cir. 2007)); *MultiPlan*, 2013 U.S. Dist. LEXIS 133397, at *4-5 (granting motion to dismiss where "the text of the facsimile does not support [the] conclusory allegation" that it "is an advertisement promoting defendants' services"); *Vallianos v. Schultz*, 2019 U.S. Dist. LEXIS 174729, at *10-11 (W.D. Wash. Oct. 8, 2019) ("Because it is clear to the Court that Defendant's text message and Defendant's Miami speech were not made for the purpose of selling his book, Defendant's motion to dismiss Plaintiffs' TCPA . . . claim is GRANTED.  The Court also finds that the claim should be dismissed with prejudice because the claim could not be saved with any amendment."); *see also N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640, 642 (9th Cir. 2012) (affirming dismissal).

rejected this tactic. *NIA*, 767 F. App'x at 250 ("We think that in almost all cases, a recipient of a fax could argue under the pretext theory that a fax from a commercial entity is an advertisement. The pretext theory, unless closely cabined, would extend [the] TCPA's prohibition too far.").

Finally, Plaintiff encourages this Court to follow *Boehringer* and "look beyond the four corners of the fax." ECF No. 86 at 17. But Plaintiff has given this Court nothing else to consider. Apart from the Fax, Plaintiff offers only conclusory allegations and speculation. *P&S Printing LLC*, 2015 U.S. Dist. LEXIS 93060, at *12 (granting motion to dismiss where fax did "not constitute an 'advertisement' as a matter of law, because it does not tend to propose a commercial transaction and does not appear on its face to have been sent based on a commercial pretext.").

Plaintiff relies on easily distinguishable cases, including *Drug Reform Coordination Network, Inc. v. Grey House Publ'g., Inc.*, 106 F. Supp. 3d 9 (D.D.C. 2015).[8] In *Drug Reform*, the court observed that while "on its face the [f]ax is not an 'advertisement,'" a "different conclusion obtains when the [f]ax is read together with the three direct solicitation emails that followed." 106 F. Supp. 3d at 14. Notably, these "solicitation emails" were attached as exhibits to the plaintiff's amended complaint and were considered on the attendant motion to dismiss. *See* Case No. 1:14-cv-00701, ECF Nos. 12-2, 12-3, 12-4. Here, Plaintiff provided no such additional "solicitation" communications in connection with the FAC to buttress its rampant speculation PDR Network

---

[8] Likewise, as PDR Network explained back in 2016, ECF No. 29 at 8-9, the reason the court in *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2013 U.S. Dist. LEXIS 79557 (D.N.J. June 6, 2013), granted leave to amend to try to establish a pretext was it noted an "assumption underlying [its] previous Opinion was that a reclassification had occurred and that new information was being shared with prescribing physicians." 2013 U.S. Dist. LEXIS 79557, at *12. Upon reconsideration, the court was concerned this "may not be accurate." *Id.* The plaintiff in *Janssen* raised a new issue about "the timing of the tier change for the drug Levaquin," which led the court to evaluate if this development altered the "seemingly informational message of the fax." *Id.* at *13 n.3. It was on this express basis that the court in *Janssen* granted leave to amend. *Id.* at *13.

"will" send such faxes "in the future."  *Cf.* ECF No. 82 ¶ 19.  Here, Plaintiff has *already* been granted leave to amend, *see* ECF No. 81 – but was still unable to identify anything pretextual.

Because the Fax is clearly not an "advertisement," either on its face or as a "pretext" to some nonspecific attempt to sell Plaintiff anything, Plaintiff's request for discovery – especially on such irrelevant topics as who decided to send the Fax, who designed it, and where it was sent – would be "directly contrary to the mandates of *Iqbal* and *Twombly*."  *See Hurley v. Messer*, 2018 U.S. Dist. LEXIS 171588, at *11-12 (S.D. W. Va. Oct. 4, 2018) (Chambers, J.) ("Perhaps realizing her claims against Defendant Fiverr stand on shaky grounds, Plaintiff asks this Court to allow her to conduct discovery on those claims if the Court finds her pleadings insufficient.  However, allowing discovery where Plaintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*.  Therefore, the Court denies Plaintiff's request.").

### E.    Plaintiff has Mischaracterized PDR Network's Constitutional Avoidance Argument as a Direct Constitutional Challenge to the TCPA.

Plaintiff's challenge to PDR Network's constitutional argument is a throw-away; indeed, Plaintiff has entirely misconstrued the point.  Rather than arguing the TCPA is directly unconstitutional, PDR Network asserted *Plaintiff's reading of the TCPA* would render the statute potentially unconstitutional insofar as it would improperly impose liability due to the status of the speaker as between *for*-profit and *non*-profit entities.  ECF No. 85 at 14-15.  Nowhere does PDR Network assert the TCPA is unconstitutional.  For this reason, Plaintiff's misplaced claims about the need for a "notice of unconstitutionality" is baseless.  ECF No. 86 at 18.  Equally irrelevant are the cases Plaintiff cites – which either involved as-written or as-applied constitutional challenges to the TCPA.  Again, PDR Network is not raising such a challenge.  The issue is Plaintiff's improper focus on PDR Network as a "for profit" entity (as part of a failed attempt to

connect the dots on how PDR Network makes money from distributing the *PDR*), which implicates First Amendment concerns this Court can and should avoid by properly construing the TCPA.

Plaintiff offers no meaningful response to PDR Network's constitutional avoidance argument – which invokes the well-established principle that courts will not adopt, and may not defer to, a statutory construction that raises serious constitutional concerns if an alternative construction is available. ECF No. 85 at 13-15 (citing cases). Plaintiff's Response provides further confirmation that the avoidance canon applies here.

Plaintiff attempts to wave away the constitutional avoidance issue by arguing courts have upheld the TCPA against First Amendment challenges. Plaintiff ignores that those cases held the TCPA passes muster because it is "even-handed, in that it applies to commercial solicitation by any organization" whether charity or for-profit. ECF No. 85 at 14 (citing *Destination Ventures Ltd. v. FCC*, 46 F.3d 54, 57 (9th Cir. 1995)). Those cases provide no shelter for Plaintiff, and, in fact, highlight the problem. Indeed, Plaintiff's proposed interpretation would *introduce* discrimination into a statute that, until now, has been viewed as neutral. Recent U.S. Supreme Court decisions make clear discriminatory speech regulations are often unconstitutional. ECF No. 85 at 15 (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011); *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015); *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020)).

Plaintiff also seeks to distinguish these cases by arguing they do not apply to "commercial" speech settings. This argument mischaracterizes the U.S. Supreme Court's *Sorrell* decision, which directly addressed – and invalidated – a commercial speech regulation. And it ignores the U.S. Supreme Court's decision in *Barr*, which invalidated an aspect of the TCPA's robo-call provisions.

Plaintiff also contends this Court need not consider whether the TCPA applies differently to for-profit and non-profit entities. ECF No. 86 at 18. Ironically, it was *Plaintiff* that created this

issue in the first place by adding the allegation that PDR Network is a "for-profit entit[y]" that distributes free e-books "in the hope of future financial gain" to the FAC.  ECF No. 82 ¶¶ 16, 21.

Because it would plainly raise constitutional concerns under the First Amendment to construe the TCPA as permitting non-profit organizations to offer free goods and services via fax, while restricting corporations from engaging in the same speech, this Court should apply the constitutional avoidance canon and reject Plaintiff's proposed construction of the TCPA. Accordingly, the constitutional issue implicated by Plaintiff's misguided reading of the TCPA can simply be added to the list of reasons why this Court should, once again, dismiss this case.

## CONCLUSION

Due to Plaintiff's fundamental, incurable pleading deficiencies it has failed to state a claim under the TCPA.  The FAC should be dismissed with prejudice, with no further leave to amend.[9]

---

[9]  *See, e.g.*, *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."); *Gibson v. Owens*, 2018 U.S. Dist. LEXIS 50419, at *10-11 (D.N.J. Mar. 27, 2018) ("In light of (a) the opportunity that has already been given to Plaintiff to submit an amended complaint that meets the requisite pleading standards, and (b) the Amended Complaint's failure to allege facts sufficient to survive [applicable statutory] review, the Court concludes that permitting further amendment . . . would be futile.  The Court hereby dismisses with prejudice the entirety of all claims . . . in the Amended Complaint."); *Humphreys v. PPL Elec. Utils. Corp.*, 2014 U.S. Dist. LEXIS 154819, at *6-7 (E.D. Pa. 2014) ("An examination of the Amended Complaint in this matter reveals a complete lack of factual allegations from which a plausible claim for a violation of [statute] can be inferred[.] Accordingly, further amendment of the amended complaint would be futile and . . . claims against all defendants are dismissed with prejudice."); *Payne v. DeLuca*, 2006 U.S. Dist. LEXIS 89251, at *85 (W.D. Pa. 2006) ("[T]his Court explicitly pointed out Plaintiffs' shortcomings in pleading [the necessary elements] in the first amended complaint.  Indeed, the failure to rectify those shortcomings was one of the reasons the Second Amended Complaint was dismissed with prejudice because the Court concluded Plaintiffs were unable or unwilling to do so.").

**PDR NETWORK, LLC**
**PDR DISTRIBUTION, LLC, AND**
**PDR EQUITY, LLC**
**By Counsel**

Dated: May 19, 2021

By:  _s/ Marc E. Williams_

**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**
Marc E. Williams (WVSB# 4062)
Robert L. Massie (WVSB# 5743)
949 Third Avenue, Suite 200
Huntington, WV 25701
Phone: 304.526.6501
Fax: 304.526.3541
Email: marc.williams@nelsonmullins.com
Email: alex.turner@nelsonmullins.com

**BLANK ROME LLP**
Jeffrey N. Rosenthal, admitted _pro hac vice_
One Logan Square, 130 N. 18th Street
Philadelphia, PA 191013
Phone: 215.569.5553
Fax: 215.832.5553
Email: Rosenthal-j@blankrome.com

Ana Tagvoryan, admitted _pro hac vice_
2029 Century Park East, Sixth Floor
Los Angeles, CA 90067
Phone: 424.239.3465
Fax: 424.239.3690
Email: ATagvoryan@blankrome.com

_Attorneys for Defendants PDR Network,_
_LLC, PDR Distribution, LLC, and PDR_
_Equity, LLC_

19

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 19th day of May, 2021, a true and correct copy of the foregoing "***Reply In Further Support of Motion to Dismiss Pursuant to Rule 12(b)(6)***" was filed using the Court's CM/ECF system, which will provide electronic notice to the following individuals:

Brian J. Wanca
Ryan M. Kelly
Glenn L. Hara
**ANDERSON+WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
bwanca@andersonwanca.com
rkelly@andersonwanca.com
ghara@andersonwanca.com

W. Stuart Calwell
D. Christopher Hedges
David H. Carriger
**THE CALWELL PRACTICE, LLC**
500 Randolph Street
Charleston, WV 25302
scalwell@calwelllaw.com
dcarriger@calwelllaw.com
chedges@calwelllaw.com

*Counsel for Plaintiff*
*Carlton & Harris Chiropractic, Inc.*

By: _____*s/ Marc E. Williams*_____
            MARC E. WILLIAMS