IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

CARLTON & HARRIS CHIROPRACTIC,
INC., a West Virginia corporation,
individually and as a representative of a class
of similarly-situated persons,

                Plaintiff,

v.                                              CIVIL ACTION NO.  3:15-14887

PDR NETWORK, LLC,
PDR DISTRIBUTION, LLC,
PDR EQUITY, LLC, and
JOHN DOES 1-10,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants PDR Network, LLC, PDR Distribution, LLC, and PDR Equity, LLC's (collectively "Defendants") Motion to Dismiss Plaintiff's First Amended Class Action Complaint. ECF No. 84. For the reasons herein, the Court **GRANTS** the Motion.

**I. BACKGROUND**

This action arises from Plaintiff's challenge to Defendants' practice of sending unsolicited facsimile advertisements. *See e.g.*, Am. Compl., ECF No. 82. Plaintiff Carlton & Harris Chiropractic, Inc. is a West Virginia chiropractic office. *Id*. ¶ 8. Defendants are entities who profit from the sale of healthcare products and services, such as prescription management programs and healthcare messaging. *Id*. at ¶¶ 16-18.

On or about December 17, 2013, Defendants transmitted an unsolicited fax to Plaintiff, which it received on a stand-alone fax machine. *Id*. ¶ 11. The fax is addressed from "Practice

1

Manager" to "PDR Network" and the subject line of the fax reads "FREE 2014 *Physicians' Desk Reference* ["PDR"] eBook – Reserve Now." *Id*. ¶ 12; Ex. A, ECF No. 82-1. The body of the fax states that the 2014 PDR eBook contains the "[s]ame trusted, FDA-approved full prescribing information," "[n]ow in a new, convenient digital format." *Id*. ¶ 13; Ex. A. It contains two sentences stating that recipients can reserve their "free" PDR eBook. Ex. A. It also asks parties to contact customerservice@pdr.net for additional information and tells recipients that "[t]o opt out of delivery of clinically relevant information about healthcare products and services from PDR via fax, call 866-469-8327. You are receiving this fax because you are a member of the PDR network." Am. Compl. ¶¶ 14-15; Ex. A.

Plaintiff alleges that Defendants violated the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Protection Act ("JFPA"), when they sent this fax because it was an unsolicited advertisement. *See e.g.,* Am. Compl.; 47 U.S.C. § 227. Specifically, Plaintiff alleges that Defendants: are for-profit entities providing health knowledge products and services; are the leading providers of behavior-based prescription management program and healthcare messaging; and, are creators of the PDR eBook, the most recognized drug information reference available in the nation. *See* Am. Compl. ¶¶ 16-17. Defendants "benefit or profit from the sale of the 'healthcare products and services' referred to in [the fax]." *Id*. ¶ 18. The fax is both an advertisement on its face and a pretext to future advertising because the fax states that recipients will continue to receive faxes about Defendants' products and services unless they opt out. *Id*. ¶ 19. "Defendants receive money from the pharmaceutical companies whose drugs are listed in the PDR, and, on information and belief, the amount of money that Defendants receive from the drug companies… turns on how many copies of the

2

2014 PDR e-Book Defendants distribute." *Id*. ¶ 20. Defendants distribute the eBook for free, in hope of future financial gain and to lead to future sales of other goods and services. *Id*. ¶ 21.

On September 30, 2016, this Court dismissed Plaintiff's initial Complaint in its entirety, determining that the fax was not an "advertisement" within the meaning of the TCPA because it "certainly offers a good to Plaintiff, but neither the fax nor PDR exhibit a commercial aim." *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, No. 3:15-14887, 2016 WL 5799301, at *3 (S.D.W. Va. Sept. 30, 2016) ("*PDR I*"). The Court also noted that it was not bound to defer to a 2006 Federal Communications Commission ("FCC")[1] Order, which interpreted the meaning of "unsolicited advertisement" under the TCPA. *Id*. at *4. The FCC Order states that "facsimile messages that promote goods or services even at no cost… are unsolicited advertisements under the TCPA's definition." Rules and Regulations Implementing Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25,967, 25,973 (May 3, 2006) [hereinafter "FCC Order"]. The Court found that the TCPA's definition of unsolicited advertisement was "unambiguous" and "clear and easy to apply," and therefore, the FCC Order was not due "substantial deference." *PDR I,* 2016 WL 5799301, at *4.

On appeal to the Fourth Circuit, this Court's decision was vacated and remanded. *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC,* 883 F.3d 459 (4th Cir. 2018) ("*PDR II*"). The Fourth Circuit held that the Hobbs Act's jurisdictional provisions stripped the district court of the ability to engage in a *Chevron* analysis of the 2006 FCC Order. *Id*. at 464. It went on to interpret the FCC Order and found that the "fax was an advertisement under the plain meaning of the 2006 FCC Rule," and this Court therefore erred in finding the fax was not an advertisement as a matter of law. *Id*. at 468-69.

---

[1] The FCC is charged with implementing the TCPA. 47 U.S.C. § 227(b)(2).

The Supreme Court granted review to answer: "[w]hether the Hobbs Act required the district court in this case to accept the FCC's legal interpretation of the Telephone Consumer Protection Act." Petition for Writ of Certiorari, *PDR Network, LLC, v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 478 (2018) (No. 17-1705). After argument, however, the Supreme Court determined that the extent to which the 2006 FCC Rule binds the lower court may depend on the resolution of two preliminary sets of questions: (1) what is the legal nature of the 2006 FCC Order; and (2) did PDR have a "prior" and "adequate" opportunity to seek judicial review of the Order. *See PDR Network LLC, v. Carlton & Harris Chiropractic, Inc.*, 139. S. Ct. 2051, 2055 (2019) ("*PDR III*").

When the Fourth Circuit revisited these issues on remand, it noted that parties agreed that the relevant portions of the FCC Order are interpretive; therefore, the district court was not bound to follow it, which rendered the second question moot. *See Carlton & Harris Chiropractic, Inc., v. PDR Network, LLC,* 982 F.3d 258, 263-64 (4th Cir. 2020) ("*PDR IV*"). The Fourth Circuit remanded the case to this Court "to consider what level of deference the court should afford the 2006 FCC Rule and what the proper meaning of 'unsolicited advertisement' is in light of that deference." *Id*. at 266.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

## III. DISCUSSION

The TCPA prohibits the use of a fax machine to send "unsolicited advertisement[s]." 47 U.S.C. § 227(b)(1)(C). To prevail on a TCPA claim, the plaintiff must show the defendant (1) used a telephone facsimile machine to send an (2) unsolicited (3) advertisement. *See id.* The TCPA defines unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission, in writing or otherwise." *Id.* at § 227(a)(5). Here, Defendants do not dispute the first two elements, but argue that their fax offering a free good is not an advertisement under the TCPA. The 2006 FCC Order says that facsimile messages that promote goods or services, even at no cost, are advertisements. *See* FCC Order at 25,973. The

issue is what level of deference is due to the FCC Order and, in light of that, whether Plaintiff has adequately alleged that the fax is an advertisement within the meaning of the statute.

### A. Applicable Level of Deference

Defendants first argue that, because the statute is unambiguous, there need not be any deference given to the 2006 FCC Order. Defs.' Mem. in Supp. at 7-10, ECF No. 85. Plaintiff argues that the fax is plausibly an advertisement under the terms of the TCPA itself, without resort to the FCC Order. Pl.'s Resp. at 6-9, ECF No. 86. In the alternative, the fax is an advertisement under the terms of the FCC Order, which is entitled to *Skidmore* deference. *Id*. at 9-13.

To determine whether the Order is entitled to *Skidmore* deference, the initial inquiry is whether the statute is ambiguous. *See e.g., Skidmore v. Swift & Co*., 323 U.S. 134 (1944). *See also Knox Creek Coal Corp. v. Sec'y of Labor, Mine Safety & Health Admin*., 811 F.3d. 148, 157 (4th Cir. 2016) ("As a result, to determine whether any deference is due, we must examine whether the statute is ambiguous."); *Nahigian v. Juno-Loudon*, *LLC*, 677 F.3d 579, 587 n.6 (4th Cir. 2012) ("We hold that the plain language is unambiguous, thereby foreclosing the use of the guidelines as an interpretive aid."); *Cline v. Hawke,* 51 F. App'x 392, 396 (4th Cir. 2002) ("Under *Skidmore*, a court should give some consideration to the interpretation of an *ambiguous* statutory provision made by the administering agency….") (emphasis added).

For largely the same reasons as stated in its first opinion, the Court will "decline to defer to the guidelines because the plain language of the statute forecloses" the inclusion of faxes with no discernible commercial purpose within the definition of advertisement. *Nahigian*, 677 F.3d at 587.  Because the Court can interpret the meaning of unsolicited advertisement from a plain reading of the TCPA's text, it need not consider the FCC Order.

The definition of unsolicited advertisement in the TCPA is, on its own, clear and easy to apply. "Unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Advertisement is defined as "[a] commercial solicitation; an item of published or transmitted matter made with the intention of attracting clients or customers." *Advertisement*, *Black's Law Dictionary* (11th ed. 2019). In turn, commercial has many definitions, but the primary definition (and one applicable here) is "[o]f, relating to, or involving the buying and selling of goods; mercantile." *Commercial, Black's Law Dictionary* (11th ed. 2019)[2].

Principles of ordinary English grammar dictate that this Court read the adjective "commercial" to modify both "availability" and "quality" of any property, goods, or services. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.") (citing cases). *See also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169-70 (2021) (applying the canon forcefully to a postpositive modifier); *Long v. United States*, 199 F.2d 717, 719 (4th Cir. 1952) (observing the "use of the adverb 'forcibly' before the first of the string of verbs . . . shows quite

---

[2] The entire definition of commercial reads:
    1. Of, relating to, or involving the buying and selling of goods; mercantile <commercial advertising>. 2. Resulting or accruing from commerce or exchange <commercial gains>. 3. Employed in trade; engaged in commerce <commercial travelers>. 4. Manufactured for the markets; put up for trade <commercial products>. 5. Of, relating to, or involving the ability of a product or business to make a profit <commercial potential>. 6. Produced and sold in large quantities <commercial cosmetics>. 7. *Pejorative.* More concerned with money than with quality <he sold out and became commercial>.

plainly that the adverb is to be interpreted as modifying them all."). By its terms, the TCPA requires a commercial element to find that an unsolicited fax is an advertisement.

Other courts examining the matter have reached this same conclusion based on the plain meaning of the statutory language. "To be commercially available within the meaning of JFPA, a good or service must be available to be bought or sold (or must be a pretext for advertising a product that is so available.)" *N.B. Indus., Inc. v. Wells Fargo & Co.,* 465 F. App'x 640, 642 (9th Cir. 2012) (citing *Commerce, The American Heritage Dictionary* (3d ed. 1994))). *See also Robert W. Mauthe, M.D., P.C., v. Optum, Inc*., 925 F.3d 129, 133 (3d Cir. 2019) ("So to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim…. [T]here must be a nexus between the fax and the purchasing decisions of an ultimate purchaser….")(citation omitted); *Robert W. Mauthe, M.D., P.C., v. Nat'l Imaging Assocs*., *Inc.*, 767 F. App'x 246, 249 (3d Cir. 2019) ("[A]t a minimum for the sending of the fax to violate the TCPA it must directly or indirectly inform the recipient that the sender or some other entity sells something of value…. [T]he fax must convey the impression to its recipient that a seller is trying to make a sale to him.") (citation omitted); *Sandusky Wellness Ctr., LLC v. Medco Health Sols.*, 788 F.3d 218, 222 (6th Cir. 2015) ("An advertisement is any material that promotes the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit.") (citing 47 U.S.C. § 227(a)(5); *Advertisement*, *Black's Law Dictionary* (10th ed. 2014)).

Other district courts have held that the TCPA is unambiguous in requiring a commercial component to constitute an advertisement and have readily applied the unambiguous definition to the facts at hand. *See Bruce E. Katz, M.D., P.C., v. Focus Forward, LLC*, 532 F. Supp. 3d 170, 176 (S.D.N.Y. 2021) ("The relevant regulations are not helpful, because they merely repeat the

statutory definition of 'advertisement.' And the 2006 Rule discussing pretextual faxes… does not illuminate a path to solving this question, either. Nonetheless, the TCPA's text gives the Court all it needs to decide this motion.") *aff'd,* 22 F.4th 368 (2d Cir. 2022); *Levine Hat Co. v. Innate Intelligence*, 538 F. Supp. 3d 915, 921 (E.D. Mo. 2021) ("[T]he subject faxes here are 'commercial in nature' based on the plain language of the statute.") (internal citation omitted); *Robert W. Mauthe, M.D., P.C., v. Millennium Health, LLC,* No. 18-1903, 2020 WL 2793954, at *19 (E.D. Pa. May 9, 2020) ("Congress spoke clearly in defining the term unsolicited advertisement…. Congress was not silent or ambiguous in dictating that an unsolicited advertisement requires a commercial component."); *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-2132, 2013 WL 486207, at *4 (D.N.J. Feb. 6, 2013) ("[T]he statute is not facially ambiguous….").

Here, it is undisputed that the PDR eBook is not for sale. *See* Am. Compl. at ¶ 21. Nor are the listed drugs about which the PDR eBook provides information available for sale by these Defendants. Therefore, the fax does not advertise the commercial availability of any product to be sold by Defendants. It could be argued that the fax speaks to the quality of the free eBook, noting that it is in a "convenient digital format" and has the "same trusted, FDA-approved full prescribing information," but these statements speak to the quality of a product that is not for sale. Ex. A. Thus, there is no requisite commercial aspect to the statements. The fax is purely informational. It sells nothing.

*i. Persuasiveness of the FCC Order*

Even if the Court were to find that the TCPA was ambiguous enough to require resort to the FCC's interpretative rule, the Court would not find that the interpretative rule was entitled to much deference. As the Fourth Circuit noted:

> Under *Skidmore*, the weight that courts afford an agency's interpretation depends upon the thoroughness evident in the agency's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade. The Court later distilled that principle to mean that an interpretive rule is entitled to respect only to the extent it has the power to persuade. To gauge a rule's persuasiveness under *Skidmore*, courts look to "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position.

*PDR IV*, 982 F.3d at 264-65 (internal citations, alterations, and quotation marks omitted).

Here, the interpretative rule is not very persuasive. Firstly, it is a "rambling 22-page discussion" that is "not written in the manner of a conventional regulation." *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc*., 847 F.3d 92, 100 (2d Cir. 2017) (Leval, J., concurring). More importantly, it has a striking absence of reasoning regarding its categorical conclusion that faxes promoting goods and services even at no cost are unsolicited advertisements under the TCPA. An agency's decision, where "devoid of any statutory analysis" is not necessarily entitled to *Skidmore* deference. *See Sierra Club v. United States Army Corps of Eng'rs,* 909 F.3d 635, 645 (4th Cir. 2018). Although the Order creates a prophylactic presumption, the FCC did not explain its reasons for doing so, nor did it cite any evidentiary support for its statement that faxes offering free goods and services are often part of an overall marketing campaign.[3] *See e.g*., FCC Order; *see also Boehringer,* 847 F.3d at 101 ("The Commission did not explain its reasons [for creating a prophylactic rule.]").

In 2005, the JFPA amended the TCPA primarily by clarifying the existing business relationship ("EBR") exemption to the Act and by specifying the requirements for opt-out notices and requests. *See* Junk Fax Prevention Act of 2005 § 2(a), (d) Pub. L. No. 109–21, 119 Stat. 359. The only change to the term "unsolicited advertisement" was the inclusion of the phrase "in writing or otherwise." *Id*. at § 2(g). The Order's primary, self-reported aim was to

---

[3] In fact, there is no evidentiary support given for any portion of the Order.

implement these changes and "to expressly recognize an EBR exemption from the prohibition on sending unsolicited facsimile advertisements." *See* 2006 Order at Synopsis. It was not written to change or clarify the existing definition of unsolicited advertisement because of the JFPA, nor does it provide any internal explanation of the need to address the issue.

Naturally then, the three paragraphs of the Order that discuss "Offers for Free Goods and Services and Informational Messages," the key language relied on by Plaintiff, do not have any characteristics of a typical agency "rule." FCC Order at 25,973.

Instead, the paragraphs merely provide generalized examples of behavior that is or is not covered, not specific guidance about the sending of faxes offering free goods. *Id.* It reads as advice, not any specific rule promulgated by the agency.[4] *Id*. This becomes especially apparent because other parts of the Order contain typical "rule-like" language, such as those amending the Code of Federal Regulations to establish the primary changes brought on by the JFPA (like the creation of an EBR exemption). *See id.* at 25,978 ("This clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005….). Plaintiff expects the Court to take as a per se rule a three-paragraph discussion which is not connected or related to the congressional act prompting interpretation; the Court declines.

And even if the Court were to defer to the Order, the PDR eBook at issue here is inapposite to the examples given by the guidance. The Orders' discussion of faxes offering "free magazine subscriptions, catalogs, or free consultation or seminars," are all offers that promote items the sender actually sells. FCC Order at 25,973. For example, a free catalog advertising

---

[4] This is further reinforced by the conditional nature of the language used in these paragraphs of the Order. The Order notes that, "*in many instances*, "free" seminars serve as a pretext…." and that "free publications *are often* part of an overall marketing campaign…." *Id*. (emphasis added). These equivocal terms negate any presumptive effect of the "rule."

goods for sale by a sender has the requisite commercial connection, because the sender directly stands to profit from the goods sold by that allegedly free magazine. This is not the case with the allegations here, as no party contends that Defendants sell the drugs identified in the PDR eBook. If we applied this argument literally, instead of looking at the contents of the fax, courts would be required to look at the senders' business purpose. Under Plaintiff's theory, if the sender is a commercial enterprise offering a free item, they are subject to a per se rule that they have violated the TCPA. This reading is untenable. As this Court noted before:

> To read the FCC as guidance as a blanket ban on any fax that offers a free good or service without any commercial aspect either directly or indirectly obviates the eminently rational purpose to the FCC's guidance and strips essential meaning from the TCPA. [This] interpretation that any fax that offers a free good or service is barred by the statute is too broad and cannot be borne by the TCPA or FCC interpretation.

*PDR I*, 2016 WL 5799301, at *5.

### B. Sufficiency of the Allegations

Finding that the FCC Order is not entitled to deference is not necessarily fatal to Plaintiff's Amended Complaint. The Court must now examine whether Plaintiff's new allegations sufficiently allege that the fax in question falls within the remit of the TCPA. Again, the TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5).

In its first *PDR* decision, this Court found that, as alleged, Plaintiff had not shown that either "the fax []or PDR exhibit a commercial aim." *PDR I*, 2016 WL 5799301, at *3. Indeed, the "essential commercial element of an advertisement [was] missing from the fax; that is, there [was] no 'hope to make a profit' from the offer and distribution of the reference book," where Defendants did not sell prescription drugs or the reference book. *Id.* (quoting *Sandusky*, 788 F.3d at 222). Plaintiff had not, at that point, alleged any facts, other than a conclusory recitation of the

12

elements of a TCPA claim, that "plausibly indicate[] that PDR gains financially from the distribution of the reference book beyond speculative or ancillary gains." *Id*. This remains true.

Plaintiff alleges new facts that it claims viably suggest the required commercial connection under the TCPA. The Amended Complaint now alleges that Defendants "benefit or profit from the sale of the 'healthcare products and services' referred to in Exhibit A." Am. Compl. ¶ 18. It now alleges that the fax is a pretext to future advertising or part of an overall marketing campaign because it informs the recipient that it must opt out of delivery or it will continue to receive faxes about other healthcare products and services, which "pertain to Defendants' commercially available" products. *Id*. ¶ 19. The Complaint now avers that "Defendants receive money from the pharmaceutical companies whose drugs are listed in the Physicians' Desk Reference, and… the amount of money that Defendants receive from the drug companies whose products are featured in the 2014 PDR e-Book turns on how many copies of the 2014 PDR e-Book Defendants distribute, and so Defendants stand to profit when a provider accepts a free copy." *Id*. ¶ 20. None of these new allegations can create the required underlying commercial nexus where it does not exist within the fax at issue.

The only reference to the products Defendants sell (and could directly profit from), "healthcare products and services," is in the opt-out notice, in tiny print at the bottom of the page. The fax contains details of the eBook's benefits, but these qualities are all describing a product that Defendants are providing for free. Further, the vague allegation that Defendants "stand to profit when a provider accepts a free copy [of the eBook]" is insufficient to survive dismissal. Am. Compl. at ¶ 20. This allegation does not change the fact that the fax itself does not offer any products that Defendants directly sell, nor does it discuss the quality or availability of those products to customers like health care providers. As this Court noted before, this type of

13

ancillary benefit is too remote. *PDR I*, 2016 WL 5799301, at *3. *See also Ambassador Animal Hosp., Ltd. v. Elanco Animal Hosp*., No. 20-CV-2886, 2021 WL 633358, at *4 (N.D. Ill. Feb. 18, 2021) ("[A]ncillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation.") (citing *Orrington v. Scion Dental, Inc.*, No. 17-CV-0884, 2019 WL 4934696, at *5 (N.D. Ill. Oct. 7, 2019) (quoting *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 225 (6th Cir. 2015)).

What the fax literally offers is a free and informational eBook. Alleging an underlying and distant commercial purpose does not change that. The fax remains unchanged from the time of filing of the first Complaint. It does not offer something for sale; thus, it does not constitute an advertisement under the TCPA. *See Phillips Randolph Enters., LLC. v. Adler-Weiner Rsch. Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (fax notifying the recipient of a research discussion on a new health care program was not an advertisement); *Physicians HealthSource, Inc. v. MultiPlan Servs., Corp*., No. 12-11693, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013) (faxes regarding services already available to fax recipient pursuant to an existing account or subscription were not advertisements); *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Rsch. Inst., Inc.,* No. 06-0369, 2006 WL 1766812, at *1–2 (W.D. Mo. June 23, 2006), (fax regarding Defendant's need for test subjects in clinical drug trial was not an advertisement) *aff'd,* 222 F. App'x 530 (8th Cir. 2007); *N.B. Indus. v. Wells Fargo & Co.,* No. 10-03203, 2010 WL 4939970, at *1 (N.D. Cal. Nov. 30, 2010) (faxes regarding Asian Business Leadership award application were not advertisements) *aff'd,* 465 F. App'x 640 (9th Cir. 2012); *ARcare v. IMS Health, Inc*., No. 2:16CV00080, 2016 WL 4967810, at *3 (E.D. Ark. Sept. 15, 2016) (fax requesting verification of contact information is not an advertisement). Even with the benefit of guidance

14

from the Fourth Circuit, the Court cannot find that the unchanged fax now offers something for sale where it clearly does not.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that the FCC Order is owed no deference and that Plaintiff's allegations fail to state a claim. Accordingly, this Court **GRANTS** Defendants' Motion to Dismiss. ECF No. 84. As the Motion has been resolved, any request for oral argument therein is **DENIED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        February 8, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

15