IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**CARLTON & HARRIS CHIROPRACTIC INC., individually and as the representative of a class of similarly situated persons,**

      **Plaintiff,**

v.                                                                                           Case No.:  3:15-cv-14887

**PDR NETWORK, LLC,** *et al.,*

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's First Motion to Compel Discovery. (ECF No. 113). For the reasons that follow, the Court **GRANTS, in part,** and **DENIES, in part,** the motion.

**I.      Relevant Facts**

This is a putative class action alleging violations of the federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 (the "Act"). Plaintiff alleges that Defendants sent unsolicited advertisements via facsimile (the "advertisements"), including in December 2013, with the goal of having class members download a free digital version of the Physicians' Desk Reference ("PDR"), a resource that contains detailed information about pharmaceuticals listed in the reference. (ECF No. 82 at 3-4). The advertisements provided instruction on how to obtain the free digital PDR, or PDR eBook. Plaintiff alleges that "Defendants receive money from the pharmaceutical companies whose drugs are listed in the *Physicians' Desk Reference,* and,

on information and belief, the amount of money that Defendants receive from the drug companies whose products are featured in the 2014 PDR e-Book turns on how many copies of the 2014 PDR e-Book Defendants distribute, and so Defendants stand to profit when a provider accepts a free copy." (ECF No. 82 at 5). This allegation by Plaintiff has been described by various courts as the "commission allegation." Proving this allegation is crucial to Plaintiff's case, because the Act only applies to communications that have a commercial component or nexus. *See Carlton & Harris Chiropractic, LLC v. PDR Network, LLC,* 80 F.4th 466, 475 (4th Cir. 2023).

On October 19, 2023, this Court entered an Order limiting discovery to the commission allegation. (ECF No. 103). The Court granted the parties six months to complete the discovery after which they could file summary judgment motions. (*Id.*). Following disposition of the motions, the Court will enter a Scheduling Order, if appropriate. (*Id.*).

Plaintiff filed its first set of discovery requests on Defendants, which they answered on February 7, 2024.[1] (ECF Nos. 113-1, 113-2). Defendants objected to a number of the requests, so the parties met and conferred. When they could not resolve all of their disputes, Plaintiff filed the instant Motion, seeking an order from the Court compelling Defendants to provide complete answers to Interrogatory Nos. 2, 3, 4, 5, 6, 8, and 9 and Requests for Production of Documents Nos. 1, 2, 3, 4, 5, 7, 9, and 10.

## II. **Applicable Law**

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery in this action. It states, in relevant part:

---

[1] It appears from the docket that neither party filed the required certificate of service documenting when the discovery requests were served and when the answers to discovery were served.

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). "Relevance is not, on its own, a high bar." *Ceresini v. Gonzales*, No. 3:21-CV-40 (GROH), 2022 WL 628520, at *3 (N.D.W. Va. Mar. 3, 2022) (citation omitted). As stated in the rule, information "need not be admissible in evidence to be discoverable." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "Federal courts have long understood that relevancy for discovery purposes is defined more broadly than relevancy for evidentiary purposes." *Id.*

Even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a 'high bar,' its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Ceresini*, 2022 WL 628520, at *3. The factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). The party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Jonathan R. v. Just.*, No. 3:19-CV-00710, 2023 WL 8629147, at *2 (S.D.W. Va. Dec. 13, 2023); *McEvoy v. Diversified Energy Co. Plc*, No. 5:22CV171, 2023 WL 6192769, at *1 (N.D.W. Va. May 15, 2023); *Fine v. Bowl Am., Inc.*, No. CV SAG-21-1967, 2023 WL 8479250, at *2 (D. Md. Dec. 7, 2023); *Perez v. Huneycutt*, No. 5:22-CV-00120-MR, 2023 WL 8813553, at *2 (W.D.N.C. Dec. 20, 2023); *Doe v. Mast*, No. 3:22CV00049, 2023 WL 8481049, at *2 (W.D. Va. Dec. 7, 2023); *United States v. White*, No. 2:23-CV-00001-BO, 2023 WL 8451744, at *7 (E.D.N.C. Dec. 6, 2023). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

**III.** <u>Discussion</u>

**A. Interrogatory No. 2**

Plaintiff asks for the identity of every person who participated in the decision to send the advertisements, as well as the extent and substance of the participation. The parties met and conferred and apparently agreed that Defendants would provide information about the "key two or three persons" who participated. Therefore, the motion to compel an answer to the original interrogatory is **DENIED**, as moot.

**B. Interrogatory Nos. 3, 4, 5, 6 and Requests for Production Nos. 1, 2, 3, 4, 5**

These discovery requests concern the number of facsimile transmissions of the advertisements that were sent; the number of occasions on which they were faxed; the

equipment or software used to fax them; how Defendants developed the list of persons or facsimile numbers to which they sent the advertisements; the identities of the persons or facsimile numbers to which the advertisements were sent; and any corresponding documentation. Plaintiffs argue that this information should be compelled, because it is relevant to the number of eBooks that were actually downloaded, which is relevant to the commission received by Defendants. Defendants argue that this information does not show how many PDR eBooks were downloaded, or how many recipients of the advertisements requested a digital PDR. Defendants surmise that Plaintiff is simply attempting to conduct "class discovery," rather than gather information pertinent to the commission allegation. Defendants contend that the discovery is disproportional to the current needs of the case.

The Court agrees with Defendants that, while these discovery requests might, in some roundabout way, eventually lead to relevant information, they are not proportional to the needs of the case. If Plaintiff wishes to determine the number of eBooks that were downloaded and the amount of the commissions earned by Defendants based upon the eBooks downloaded, then it should ask those questions. Moreover, at this point in the litigation, Plaintiff has no need for the names of the individuals, or the facsimile numbers of those individuals, who received the advertisement. These particular requests go beyond the scope of permissible discovery. Therefore, Plaintiff's motion for an order compelling complete answers to Interrogatory Nos. 3, 4, 5, 6 and Requests for Production Nos. 1, 2, 3, 4, 5 is **DENIED**.

    C.    **Request for Production No. 7**

Request for Production No. 7 asks for a copy of any Physicians' Desk Reference eBook that was distributed by Defendants during the "relevant time period," which

5

Plaintiff defines as the four years preceding the filing of the complaint through the time of trial. Defendants object to the discovery request as being irrelevant, duplicative, outside the scope of permissible discovery, unduly burdensome, overly broad, and not proportional to the needs of the case.

Plaintiff argues that an answer to the request should be compelled, because that information will lead to the discovery of relevant evidence regarding how many copies of the PDR eBooks were distributed by Defendants. That explanation is nonsensical. It does not follow—in any conceivable way—that Plaintiff's personal receipt of a copy of the digital PDRs that were published by Defendants would shed light on the total number of PDR eBooks downloaded between 2011 and the present. The only information to be gained by this request is the content of the digital PDRs, which is not an issue in the commission allegation. Therefore, Plaintiff's motion for an order compelling a response to Request for Production No. 7 is **DENIED**.

### D.     Interrogatory No. 8 and Request for Production No. 9

In these discovery requests, Plaintiff asks Defendants to explain how much money Defendants were paid by pharmaceutical companies that "indirectly funded" Defendants during the relevant time period and to provide related documents. Plaintiff argues that this information is critical to the commission allegation, because Plaintiff must establish how much money Defendants received and how many copies of the eBook were downloaded. Defendants respond that these requests are not narrowly tailored to the commission allegation and, thus, are beyond the scope of permissible discovery. Plaintiff asserts that requiring it to narrow its requests to payments made based on downloaded copies of the PDR eBook is an "artificial limitation" not imposed by the District Court or the Fourth Circuit. (ECF No. 115 at 2). Plaintiff is incorrect.

6

In order for Plaintiff to prove its commission allegation, it must show that the faxed advertisements themselves had a commercial nexus; in other words, that Defendants received a commercial advantage directly from faxing the advertisements when PDR eBook were downloaded. *Carlton & Harris Chiropractic, Inc.*, 80 F.4th at 475 ("In other words, PDR Network profits when its fax persuades a medical practitioner to accept the proffered eBook."). By separating the issue of the amount of money Defendants received from pharmaceutical companies from the number of downloaded PDR eBooks, Plaintiff has expanded the scope of the requests beyond the commission allegation. Defendants indicate that pharmaceutical companies pay Defendants for services unrelated to downloads of the PDR eBook. For example, the companies pay Defendants a fee simply to have the drug information listed in the reference, and that amount is not tied to downloads of the PDR eBook or the advertisements at issue. Consequently, the only information relevant to the commission allegation is how much money Defendants earn when a PDR eBook, or a certain number of PDR eBooks, are downloaded by a recipient of the advertisement. *Id.* at 478 ("Carlton & Harris's commission allegation may be plausible, … but that does not mean it will be borne out by discovery. Instead, discovery may show that there are no commission payments, nor anything else to support a finding that PDR Network's free offer is commercial in nature."). The discovery requests, as written, do not tie the income to the faxed advertisements. Therefore, the requests are beyond the scope of permissible discovery. As such, Plaintiff's motion for an order compelling complete answers to Interrogatory No. 8 and Request for Production No. 9 is **DENIED**.

### E. Interrogatory No. 9 and Request for Production No. 10

Interrogatory No. 9 and Request for Production No. 10 seek information and

documentation reflecting the number of copies of the PDR eBook that were downloaded during the relevant time period. Defendants refuse to provide the information on the ground that Plaintiff should first have to show that a commission was earned on each PDR eBook downloaded. Plaintiff contends that these requests are key to making that showing.

The undersigned agrees with Plaintiff. The point of the commission allegation is that the advertisements directly resulted in profit to Defendants if PDR eBooks were downloaded by facsimile recipients. The amount of the commission may have been calculated per eBook downloaded. Or perhaps the commission was paid on a volume basis; for instance, the pharmaceutical companies paid a fee for having their information included in the PDR eBook, and then paid an additional fee if more than a certain number of PDR eBooks was downloaded. In either case, the number of eBooks downloaded in connection with the faxed advertisements would be required to determine how, and if, the advertisements resulted in profit to Defendants. Defendants do not contend that PDR eBooks were downloaded by individuals who did not receive the advertisements; therefore, the presumption is that digital PDRs were only received by recipients of the advertisements who requested them, making the number of copies downloaded relevant. Plaintiff is not required to prove its case *before* discovery is completed.

Defendants also object to the "relevant time period," which as previously stated, includes 2011 through trial. In their responses, Defendants arbitrarily limited the time frame to the filing of the complaint in 2015. However, Defendants have not provided an acceptable justification for their objection and for their limitation; particularly, as (1) Plaintiff alleges that Defendants continue to send unsolicited faxed advertisements, and (2) Plaintiff may amend or supplement its complaint in the future to conform with the evidence gathered. *See* Fed. R. Civ. P. 15. Accordingly, as these discovery requests seek

8

information relevant to the commission allegation, Plaintiff's motion for an order compelling Defendants to provide complete answers to Interrogatory No. 9 and Request for Production No. 10 is **GRANTED**. Defendants are **ORDERED** to serve supplemental responses to these discovery requests within **fourteen days** of the date of this Order and file the requisite certificate of service.

### F. General and Boilerplate Objections

Plaintiff points out that Defendants included general and boilerplate objections in their responses to discovery, which are not acceptable in this circuit. Defendants' responses are a perfect example of how *not* to answer discovery requests. Defendants preface their responses with a litany of "General Objections" which are expressly incorporated into each specific response and are "in addition to" any specific objection. Courts in this circuit disfavor general objections. *See, e.g., Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (mere recitation of the familiar litany that a request is overly broad, burdensome, oppressive, and irrelevant does not constitute a specific objection); *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D.W. Va. 2010) ("general objections to discovery, without more, do not satisfy the burden of the responding party ... because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."); *Mills v. East Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D.W. Va. 2009) ("boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."). These "General Objections" raise the protection for proprietary information, the attorney-client privilege, and attorney work product protection; they object to vagueness, ambiguity, duplication, burdensomeness, and over breadth; they reserve Defendants' right to supplement or revise answers; they refuse to produce documents belonging to third parties; and other

such nonsense. Of course, they apply only "to the extent" that they are applicable.

The "General Objections" are absolutely improper. *Mancia v. Mayflower Textile Services Co.*, 253 F.R.D. 354, 358–59 (D. Md. 2008) (court disapproves of a general objection asserted "to the extent" that it applies). By raising these non-particularized objections, Defendants run the risk of waiving any valid objections that may exist. *Id.* at 359; *see also Mezu v. Morgan State University*, 269 F.R.D. 565, 573 (D. Md. 2010). Indeed, if there were any responses to which Defendants should have asserted a privilege and supplied a privilege log, those tasks should have been done at the time of the responses. The "General Objections" will not preserve a privilege or any protection from discovery.

Despite listing "General Objections" that are incorporated into every response, Defendants nonetheless reassert many of them in the actual answers. The answers are so enmeshed in objections that it is impossible to discern whether the responses are complete. Answering discovery requests in this manner reflects poor lawyering. A lawyer should not throw every conceivable objection at a discovery request and then expect the adverse party to determine which objections might apply. Duplicative, repetitive, boilerplate objections do nothing but confuse the reader and dodge the question. Such a litigation tactic is prohibited in federal court. Quite frankly, the undersigned is astounded and troubled that, despite clear and established case law holding that such objections are improper, counsel for Defendants asserted unsupported and insupportable general objections in response to ***every*** discovery request.

Having said this, because many of the requests were clearly beyond the scope of the limited discovery allowed, or were disproportional to the needs of the case, the general objections were not considered in the undersigned's rulings. However, Defendants are

10

admonished to eliminate all general, unsupported objections from their supplemental answers to Interrogatory No. 9 and Request for Production No. 10.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:** April 3, 2024

Cheryl A. Eifert
United States Magistrate Judge